Marion HAMEL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12496.

Criminal Court of Appeals of Oklahoma.

Oct. 16, 1957.

James Springer, Jr., Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Marion Hamel, hereinafter referred to as the defendant, was charged by information in the county court of Payne County with the crime of unlawful possession of intoxicating liquor, was tried before a jury, found guilty and his punishment fixed at a fine of $50 and 30 days imprisonment in the county jail.

The evidence reveals that the defendant was the clerk of the Ambassador Hotel, located in Cushing, Payne County, Oklahoma. That on February 11, 1956, two search warrants were issued by a Justice of the Peace in Stillwater, Payne County, Oklahoma, against John Doe and Mary Roe of the Ambassador Hotel; one commanding the search of room 221, the other room 491. The warrants were served by the officers upon the defendant and they proceeded to search room 221 and also room 491. No liquor was found in either room. Thereafter, one of the officers, while walking in the hall of one of the floors, placed a chair in front of room 485, climbed upon it and peeped over the transom and saw several bottles of whisky upon a bed in that room. He went downstairs, notified the sheriff, and other members of the raiding squad. They returned to room 485 and instructed the clerk to open the door, after advising him that if he didn't want to open it, he would place a guard there and get a search warrant, and in the words of the defendant, "and so I gave him the key." Upon entering the room after the door was unlocked, 39 one half pints and 18 pints of bonded whisky were found and confiscated.

Upon this set of facts the defendant was charged with unlawful possession of intoxicating liquor. A motion to suppress was overruled by the trial court.

For reversal of said cause it is contended by the defendant that the court erred in overruling said motion to suppress, and for proposition number two, it is claimed that the court erred in overruling defendant's motion for a directed verdict based upon the state's failure to prove that the defendant had any ownership, possession of, control or dominion over the intoxicating liquor.

We shall deal only with proposition number 1 which presents two questions: (1) Was the search of room 485 without a warrant legal and (2) if not, did the defendant waive his constitutional rights by assenting thereto.

It is conceded that the officers were in the hotel by virtue of two warrants to search two different rooms, 221 and 491. These rooms were searched and no liquor found. Thus, the search commanded by the two warrants ended and the warrant had spent itself. The sheriff and a part of the raiding squad had departed to the lobby. One officer continued to search. He proceeded to another room, placed a chair in front of a door, climbed upon it, looked over the transom and saw that for which he was searching. The officers had no warrant to search room 485. The attorney general contends that this was a legal search by reason of the whisky being in plain view upon the bed. He cites as his authority Sanders v. State, Okl.Cr., 266 P. 2d 491:

"Where highway patrolmen are called to investigate the collision between two motor vehicles, and in the process of viewing one of the cars, an officer smells a strong odor of alcohol emanating from such car and by aid of a flashlight directed through the glass of a rear door he sees sacks containing undisclosed contents, but one sack had been torn and at least one broken whisky bottle is in plain view, along with full bottles, the officer was then justified in opening the door and examining the broken sack, and upon finding the rug soaked with alcohol and other full bottles of whisky in plain sight, was justified in searching the entire car without a search warrant."

It is recognized by this court and affirmed in many cases that a public offense

committed in the presence of an officer obliterates the necessity of a search warrant, as was true in the Sanders case, supra, but this case is clearly distinguishable and it is to be noted that in the Sanders case the officers had a right and it was their duty to investigate the traffic accident in which the defendant was involved. It was their duty to make a report giving the make and model of the cars involved, tag number and extent of damage and location of each car. In performing this duty, there was cogent evidence to the effect that one of the officers smelled the odor of liquor coming from the defendant's car, and by the aid of a flashlight, saw liquor and broken bottles on the floor of the rear of the car and bags on the seat. The law, therefore, was being violated in the presence of the officer and the subsequent search was in consequence reasonable. The rule adopted in the Sanders case cannot be said to be applicable here. Where liquor is exposed to view without search having to be made for said liquor, the seizure of same is justified and evidence concerning same is admissible. See Peterson v. State, Okl.Cr., 280 P.2d 1029. However, in the case at bar, the testimony presents an entirely different set of facts. Officer Stiles testified as follows:

"Q. Now, Mr. Stiles, I want to ask you this question. Did you know what was in that room before it was opened? A. I did.

"Q. How did you know that? A. The transom was open and there was a chair sitting across the hall and so I pulled the chair over to the door and looked through the transom.

"Q. And what did you see? A. Well, I could see a bed in there and there was quite a quantity of pints and half-pints scattered out over the bed."

▮▮ The liquor in question was not exposed nor could it be seen without the necessity of search. The door to the room was locked. The officer began his search by placing a chair by the door, climbing upon it and looking through the transom. It would have been difficult to distinguish the officer from a peeping tom had the room been occupied by a lady or a couple. In that event, he would most certainly have been invading the privacy of its occupants. When the officer, by the aid of the chair, looked over the transom he was in the process of a search. Not having a warrant the search was illegal in its inception and the fact that liquor was detected does not validate the unlawful search. This court said in Leason v. State, Okl.Cr., 286 P.2d 288, 289:

"A search and seizure illegal at its inception cannot be legalized by what it brings to light."

If this court were to declare that an officer could travel the halls of a hotel, apartment house, rooming house or office building, and by the aid of ladder or chair, peep through the transom and discover contraband without a warrant, and the same constitute a legal search, it would in my judgment be so contrary to the parchment upon which the Bill of Rights was written as to render its purpose subservient to a system of uncontrollable police surveillance and could only result in a surrender of the inherent rights of the people against unlawful search and seizure, and would render their freedom from suspicion, annoyance and molestation, a boon of the police rather than a guaranty under the constitution of the state and nation. The guaranties were historically expressed in the Magna Charta and the importance of these priceless securities were keenly recognized by the American people in the period preceding the revolution when spys and inquisitors of the crown were pillaging the homes of our people and searching and seizing upon the slightest provocation or authority of law. It was a result of these tragic experiences that prohibitory barriers were placed in the constitution to prevent the wrongful abuse of the right to search and seize. The proper use of the search warrant as prescribed by law is a most effective and necessary instrument in the control and suppression of crime, to protect society, but the American spirit and love of security against unlawful search and seizure has never submitted to a "chopping away" of those barriers which

are so plainly embedded in the 4th amendment to the United States Constitution which in part is as follows:

"The right of the people to be secure in their persons, house, papers, and effects, against unreasonable search and seizure, shall not be violated * * *".

Article 2, Sec. 30, of the Bill of Rights of the Constitution of the State of Oklahoma, states in part, as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches or seizures shall not be violated * * *".

This court has time and time again made clear that these provisions secure the individual in his person, his home and his property, from unbridled and unrestrained executive or administrative will. Gore v. State, 24 Okl.Cr. 394, 218 P. 545; Best v. State, 32 Okl.Cr. 89, 240 P. 159; Keith v. State, 30 Okl.Cr. 168, 235 P. 631; State v. Coburn, 68 Okl.Cr. 67, 95 P.2d 670.

No distinction can be made in the application of these protections between those justly suspected or accused of crime and the innocent. It extends to all equally. The barrier cannot be removed in one instance and replaced in another. Once removed to apprehend the guilty, they can no longer serve to protect the innocent. The necessity for these safeguards is well recited in Keith v. State, 30 Okl.Cr. 175, 235 P. 631, 633:

"It is also said that if searches such as this cannot be made the prohibition law cannot be enforced. This may be true in part, or it may be true in whole. The answer is that in articles of the Constitution having its origin in the spirit if not the letter of the Magna Charta prevents it, and that it is the duty of the court to sustain and enforce the Constitution in its entirety and not permit what may seem to be presently a desirable mode of procedure to annul such fundamental portion of our organic law as the freedom from unlawful search.".

Officers are to be commended in their efforts to enforce and preserve the law, and their job is a constant and tedious task in protecting society against a cancerous avalanche of crime, but in performing these indispensable duties they must at all times abide by the provisions of the law with which they are charged to enforce and search and seize in strict compliance with the constitution, thus to merit the utmost respect of our people for laws under which we live. Our laws provide a simple procedure to obtain a search warrant. It can be done in a matter of minutes, little effort is required. Much litigation could be avoided if officers would expend the effort to obtain warrants in all cases, except those exempted by law. In the case at bar, the state contends that the search was validated by defendant's consent to the same. The testimony in this regard is as follows by the defendant:

"Q. After room 221 and 491 were searched, tell the Court exactly what happened in relation to room 485, in other words, after you left the last room that was searched, what happened then? A. Lee Stiles came to me—we were down on the third floor or second —and he came to me and said, 'Let's go back upstairs.' We did go upstairs and he went directly to room 485. He said, 'Wait until I get the Sheriff.' And about that time the Sheriff appeared and Mr. Stiles hollered at him and said he wanted to get into this room 485. Mr. Schroeder said, 'Marion, can you open this room; do you have a key to this room?' I said, 'Yes.' Then he said, 'Do you want to open this? Wait, I'll tell you before you open it, if you don't want to open it, we will place a guard here and go get a warrant.' And so I gave them the key."

Sheriff E. G. Schroeder, placed on the stand by the defendant, testified in part as follows:

"A. The conversation was this: Did he have a key for the room? 'Yes, I have.' I said, 'Marion, you can unlock it willingly if you like; otherwise, we will go get a search warrant; you don't

have to unlock it unless you want to. You have that right to deny us entry now if you don't want to unlock it.' I said, 'If you require us to go get a search warrant, naturally, one of the officers will stand by until we got a search warrant.' He said, 'Well, if you are going to go get a search warrant anyway, I might as well unlock it.' "

In the first place this could hardly be classed as consent as to waive defendant's constitutional rights. The search began with the officer peeping over the door and discovering the contraband. The defendant was not present when this was done. The search in the opinion of this court was invalid in its inception. This constitutes a violation of the defendant's constitutional rights. He could not thereafter consent to a search that had already been made without his knowledge. There was nothing left to be done except to open the door so that the officers might acquire custody of the liquor.

In the case of Dawson v. State, 83 Okl.Cr. 263, 175 P.2d 368, 370, the defendant testified in motion to suppress that the sheriff said, "I have come to look you over again," and the defendant replied, "Nothing I can do about it, I guess," Mr. Dugan, the court held:

"A statement by defendant, 'All right,' in response to statement of sheriff, 'I have come to look you over again,' did not waive defendant's constitutional right to immunity against unlawful search since such statement by defendant is not to be construed as an invitation to search premises, but rather as a statement of intention not to resist the search."

The defendant was confronted with the entire raiding squad and told by the sheriff that if he did not voluntarily open the door he would leave a guard and go get a search warrant. Defendant said, "And so I gave them the key." This could not be construed as a consent but merely expression of intention not to resist opening of the door. Had the sheriff gone and obtained a warrant at this stage of the game it would not have cured the error; it was too late, the search was in progress long before. The rule as to this was recited in Leason v. State, Okl.Cr., 286 P.2d 288, 290:

"Where an unauthorized search and seizure is commenced and in progress, the issuance of a search warrant for the purpose of making valid that which in its inception was illegal will afford no protection to the officer making such search and seizure." See also Dean v. State, 37 Okl.Cr. 396, 258 P. 912; Wallace v. State, 49 Okl.Cr. 281, 294 P. 198.

In view of the previous decisions of this court and its earnest desire to forever defend and preserve the inherent rights afforded the people under the constitution, we declare the trial court to have committed error in overruling defendant's motion to suppress the evidence.

BRETT, P. J., and POWELL, J., concur.