Reed STORY, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14380.

Court of Criminal Appeals of Oklahoma.

March 26, 1969.

Bay, Hamilton, & Renegar, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in error, Reed Story, Jr., hereinafter referred to as the defendant, was

charged by information in the District Court of Oklahoma County with the crime of Burglary First Degree. He was tried by a jury, found guilty and sentenced to eight years in the penitentiary. From that judgment and sentence he has appealed to this Court.

Defendant has alleged several assignments of error, but it will be necessary only to discuss two questions in order to dispose of this appeal. These questions concern the admissibility of defendant's confession; and the introduction of, and the testimony concerning one of the items taken in the burglary, to wit: a wrist watch.

Briefly stated, the evidence indicates that approximately seventeen days after commission of the burglary, the Del City Police Department was notified that the Ada Police Department had a boy in jail who had admitted getting into a house in Del City. In response to this information, two Del City Policemen, Officers Cain and Huff, went to Ada where they first interrogated another boy, and then the defendant. Officer Cain, after finding out the defendant was 17 years of age, testified as follows:

"I asked him if his parents knew where he was at and he said they didn't and I asked him if they wanted to call his parents and he said that he didn't want his parents to know where he was at. I said that he didn't have to tell us anything and anything that he did say may and could be used against him and he had a right to obtain a lawyer which he declined."

The officer's testimony does not indicate any more detailed admonitions.

After this advising of rights and further questioning regarding the burglary, the defendant wrote out and signed a confession in the absence of parent, guardian, or attorney. This confession was admitted into evidence at defendant's trial over objection of defense counsel, Mr. Andrew Hamilton, who stated:

"Yes, Your Honor, we again object. On the basis that it's not a proper confession;

that the man was not advised of his rights under the statutory and case decisions of Oklahoma and the United States of America and that the confession was not a voluntary confession and was illegally obtained from a minor 17 years of age without the presence of his parents or an attorney."

The United States Supreme Court, in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held that *prior* to any in-custody police questioning, the accused must be warned in clear and unequivocal terms (1) that he has a right to remain silent; (2) that any statement that he does make may be used as evidence against him; (3) that he has a right to consult with, and have present prior to and during interrogation, an attorney, either retained or appointed; and, (4) that if he cannot afford an attorney, one will be appointed for him prior to any questioning, if he so desires.

Each of these four warnings must be given and it is not sufficient to give some, but not all, of the warnings. The result of any questioning which is not in compliance with these requirements would be inadmissible in a trial. See, 10 A.L.R.3rd, at 1060. In particular, the Supreme Court said:

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one." 384 U.S., at 473, 86 S.Ct. at 1627.

A search of the record in the instant case fails to reveal that the interrogating officers advised the defendant that if he could not afford an attorney, one would be appointed for him prior to any

questioning, if he so desired. Not only did the interrogators fail to fully comply with the Miranda requirements in the instant case, but it appears somewhat doubtful that the defendant, who the record reveals was age 17 and had only completed the seventh grade in school, gave a knowing and intelligent waiver of his rights under Miranda. It is questionable that a 17 year old boy of sub-normal education could intelligently comprehend the effect of his waiver after the inadequate warning given herein in the absence of either a parent, guardian, or an attorney.

Prior to the Miranda decision, this Court had held in Olivera v. State, Okl.Cr., 354 P.2d 792 (1960) in the second syllabus, as follows:

"Ordinarily confessions of defendants 17 and 18 years of age, accused of burglary, are inadmissible in evidence where there is absence of parent or guardian, or counsel, since such defendants should be deemed incapable of waiving the constitutional and statutory safeguards provided by law in a criminal case, unless it appears beyond a reasonable doubt that the minor defendants fully understood the effect and the results growing out of such waiver."

However, in the third paragraph of its syllabus in Olivera, supra, this Court held:

"Where 17 and 18 year old defendants' convictions are not dependent for affirmance upon confessions, but said convictions are amply supported by conclusive evidence of guilt, though the trial court may possibly have erred in admitting the confession in evidence, under such conditions the admission of the same in evidence is harmless."

Thus, even if the confession was improper in the instant case, it is possible that, after a review of the record, if the conviction was amply supported by conclusive evidence of guilt, *that the admission of the confession might not constitute reversible error, prior to the United States Supreme Court deci-*sion in *Miranda, supra.* However, the requirements of *Miranda* became effective to those trials begun after June 13; 1966, and are applicable in the instant case. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Accordingly, we conclude that, under the circumstances, admitting the confession was not only improper, but error.

Aside from the confession, there is also a serious question as to the lawfulness of the search which resulted in evidence which was admitted at the trial.

Officer Cain testified that the defendant, during his interrogation, admitted taking a wrist watch from the scene of the burglary, and that the watch could be found at his residence in Cleveland County, which was the home of his parents, laying on a ledge above the kitchen sink. As a result of this information, gained from the questioning of defendant on February 22, 1966, Officers Cain and Huff went to the residence on February 25, 1966, *without a search warrant* and found the house locked with no one in the home. Officer Cain then testified that they stood on a saw-horse or scaffold and looked in a window, where they could see the watch on a ledge. The officers then left the residence and later returned on the same day with an under-sheriff from Cleveland County, and a search warrant. The officers were waiting at the residence when the defendant's parents, Mr. and Mrs. Story, and their daughter arrived home from work. The officers told Mr. and Mrs. Story that they had come for the watch which they had seen through the window. They entered the house and took the watch without the necessity of showing the search warrant.

In Brinlee v. State, Okl.Cr., 403 P.2d 253 (1965), this Court quoted from an earlier decision, Noble v. State, 44 Okl.Cr. 214, 280 P. 476, as follows:

"Before an officer is authorized to search a private residence occupied as such, or the curtilage thereof, he must have:

(1) A valid search warrant issued by a magistrate having jurisdiction based upon

an affidavit sufficient on its face to show probable cause;

(2) Or must arrest the occupant of the premises with or without a warrant when a felony has in fact been committed, and he has reasonable cause for believing the occupant has committed it;

(3) Or the occupant must be arrested by the officer for a public offense committed or attempted in the presence of the officer;

(4) Or the occupant must voluntarily consent to the search." 403 P.2d, at 255.

In *Brinlee,* supra, This Court reversed the conviction and in conclusion, with reference to the police officers, stated:

"They should have obtained a search warrant before entering and searching this property. This they did not do; they entered as trespassers, and all evidence obtained was done so unlawfully."

The facts in the instant case present a situation similar to that in Hamel v. State, Okl.Cr., 317 P.2d 285 (1957), which involved a conviction for unlawful possession of intoxicating liquor seized in a hotel room. The police officers in the *Hamel* case were in the hotel by virtue of search warrants for two different rooms, 221 and 491. These rooms were searched and no liquor was found. One officer proceeded to another room, not named in the warrant, placed a chair in front of the door, climbed upon it, looked over the transom and saw whiskey on the bed in the room. This Court, in reversing the conviction, expressly rejected the contention of the attorney general that this was a legal search by reason of fact that the whiskey was in plain view on the bed, stating:

"The liquor in question was not exposed nor could it be seen without the necessity of search. The door to the room was locked. The officer began his search by placing a chair by the door, climbing upon it and looking through the transom. It would have been difficult to distinguish the officer from a peeping tom had the room been occupied by a lady or a couple.

In that event, he would most certainly have been invading the privacy of its occupants. When the officer, by the aid of the chair, looked over the transom he was in the process of a search. Not having a warrant the search was illegal in its inception and the fact that liquor was detected does not validate the unlawful search." 317 P.2d at 287.

■ In the instant case, the officers arrived at the defendant's residence without a search warrant, and by standing on a sawhorse or scaffold, on the private property [curtilage] of defendant's home, looked through the windows and saw the wrist watch in question. This action by the officers was in effect a search of the premises. This search was not pursuant to a warrant, nor an arrest, and could only be justified if the occupant voluntarily consented to the search. A review of the record does not indicate that the defendant gave his consent for the officers to search his residence, nor does it appear that the officers asked his permission for such a search.

■■ Furthermore, we do not find that the search was made legal by obtaining a search warrant after the premises had already been searched, since a search illegal in its inception cannot be legalized by what it brings to light. Nor does the conduct of defendant's parents in admitting the officers into the house constitute voluntary consent to the search. In *Hamel,* supra, at page 289, this Court quoted from a former decision regarding consent to search:

"A statement by defendant, 'All right,' in response to statement of sheriff, 'I have come to look you over again,' did not waive defendant's constitutional right to immunity against unlawful search since such statement by defendant is not to be construed as an invitation to search premises, but rather as a statement of intention not to resist the search."

In the instant case, there was no consent to search by defendant's parents or sister. The defendant's mother testified regarding entry into the house, after being confronted

by the officers and their announced objective, as follows:

"Well, they just told us they had come after it, so we—them being policemen, we didn't figure we could stop them from getting it."

Under the rule in *Hamel*, this statement could not be construed as consent, but merely an expression of intention not to resist entry. Regardless, it is clear that even if consent had been given by the parents on their arrival, that the search illegally begun earlier could not be legalized with a belated consent to entry into the house proper.

Accordingly, we find that the trial court erred in overruling defendant's motion to suppress the evidence.

Therefore, in view of the previous decisions of this Court and the United States Supreme Court, we find that the trial court was in error in admitting the defendant's confession, and in admitting into evidence, the wrist watch and testimony concerning it, and thus conclude that the judgment and sentence must be reversed and remanded.

BRETT, P. J., concurs.

BUSSEY, J., not participating.