G. R. HUNSUCKER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14925.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1970.

Rehearing Denied Oct. 26, 1970.

Wallace & Bickford, Ardmore, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Robert McDonald, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

The plaintiff in error, hereinafter referred to as defendant, was charged by Information in the District Court of Carter County, Oklahoma, with the crime of Receiving Stolen Property. On June 10, 1968, the case was tried to a jury which on the the same date found the defendant guilty as charged in the Information and assessed his punishment at imprisonment in the county jail for a period of one year and a fine of $500.

On June 11, 1968, a motion for new trial was filed, arguments heard, and the trial court overruled defendant's motion for new trial. On the same date, judgment and sentence was entered by the court in accordance with the jury's verdict and this appeal has been perfected from that judgment and sentence.

The facts briefly stated are as follows: J. D. Dumas testified that he was the pumper for the Massad Oil Leases located in Carter County; that on the morning of August 10, 1968, he discovered missing approximately 1,900 feet of sucker rods and at least one joint of tubing or drilling pipe from Well No. 24 and 1,900 feet of sucker rods missing from Well No. 19; he testified further that he had not given anyone authority to take the pipe and rods. Later, after the stolen pipe was found on defendant's farm, he identified the rods and drilling pipe as that taken from the Massad Leases.

Ernest L. Massad testified that he was the lease operator for various oil and gas leases in Carter County; that there had been a large quantity of sucker rods on the leases on which Wells 19 and 24 were located; that the fair market value of sucker rods on August 10, 1967, was between 20 and 25 cents per foot.

There was also testimony from David Hurley, Pinky Hurley and Kenneth Spigner, who stated the following: On August 9, 1967, they had worked for the defendant hauling hay until late in the evening, and after work the defendant had suggested to them that he wanted some sucker rods and would be willing to pay them 30 cents per rod for any they brought to him; that they could use his flatbed truck, chains and booms with which to transport the rods. They left the farm and after spending about an hour and a half at a local cafe, the Hurleys and Spigner proceeded to the Massad Lease where they took 60 to 65 sucker rods from the two leases, and in addition, two joints of drilling pipe from the second lease. They testified that late that night they returned to defendant's farm where defendant led them to a point in an open pasture approximately 100 yards from his house to unload the pipe and that he assisted and instructed them in unload-

ing the rods and pipe; telling them he would pay them the next day.

Robert Denny, Deputy Sheriff for Carter County made the investigation of the stolen sucker rods and drilling pipe on August 10, 1967. He testified that he followed the truck tracks which were observed around the two leases, to defendant's farm and back to the place where defendant's truck was parked at Tatums, Oklahoma; upon examining the truck, he found impressions of sucker rods and drilling pipe in paraffin in the back of the truck. Denny arrested both David and Pinky Hurley and Kenneth Spigner; after their arrest the Deputy and this party arrived at defendant's farm and drove through the gate into the curtilage area. They then went through a fence into the adjoining pasture. They did not have a search warrant.

Defendant did not testify in his own behalf, and in an effort to discount the testimony of the boys he offered the testimony of Fred Johnson, Justice of the Peace for Carter County, who testified that the Hurleys and Spigner were charged in his court with the crime of Grand Larceny in August of 1967.

Defendant next offered the testimony of his wife, Carmen Hunsucker, and that of his mother, Mrs. I. L. Hunsucker, both of these witnesses testified that on August 9th they were at home all evening with the defendant; that the defendant did not leave the house on that night. On cross-examination, the credibility of defendant's mother was challenged when she admitted that she had been convicted of Receiving Stolen Property in 1922.

Defendant alleges in his brief, reversable error under three propositions, which are stated as follows:

1. The trial court committed error in overruling defendant's motion to suppress the evidence.

2. The court erred in overruling defendant's demurrer to the evidence.

3. The court erred in submitting the case to the jury for the reason that the evidence wholly failed to establish the allegations of the Information.

With reference to defendant's first proposition in which he contends it was error for the trial court to have denied his motion to suppress, defendant cites several cases but he relies primarily on Hamel v. State, Okl.Cr., 317 P.2d 285 (1957), and Brinlee v. State, Okl.Cr., 403 P.2d 253 (1965), to sustain his position that a search, void in its inception, cannot be legalized by what it brings to light.

■ Defendant's statement is correct; however, under the facts of the instant case, the stated rule is not applicable. Under the facts of this case, the deputy sheriff followed the tracks to defendant's farm and then to the cafe; later he and Mr. Dumas went to the defendant's farm, entered the curtilage of defendant's property by driving through the gate and then proceeded on foot through a fence into the adjoining pasture where, some three hundred feet from the house, the stolen pipe was found.

Defendant also refers to Simmons v. State, Okl.Cr., 277 P.2d 196 (1954), as authority for his proposition that a search, illegal in its inception, cannot be made legal by what it brings to light; however, the Simmons case is distinguishable from the instant case in that in Simmons, without a search warrant, the authorities found whiskey in the automobile within the curtilage of the Simmons property. They then followed the car tracks down to the place where the car had come from, and found additional bottles of whiskey hidden under a boat turned upside down. Hence, in Simmons the evidence found *inside the car, within the curtilage area* led the authorities to the additional evidence. Consequently, the second finding was contaminated by the first illegal search. In the instant case no search around defendant's house was made and no evidence was discovered in the curtilage area whatsoever. It was not until the deputy sheriff and the others went into the adjoining pasture *outside the curtilage* of defendant's property where they located the stolen pipe.

■ The Simmons case, also cited as authority in the state's brief, sets forth the exclusionary rule of evidence which this Court has applied for many years and which discusses the rule as the theory of the "fruit of the poisonous tree." But this rule has no application in the instant case. In this case there was no evidence found within the curtilage area to become contaminated; and the open pasture being beyond the curtilage and outside the veil of protection of the exclusionary doctrine of evidence, which arises from an illegal search and seizure, determines that the rule does not apply. This Court stated in Brinlee v. State, supra:

> "Curtilage includes all outbuildings used in connection with residence, such as garages, sheds, barns, yards and lots connected with an in close vicinity of residence, but an open pasture and wooded areas beyond the fenced residence property would not constitute part of the curtilage."

The testimony in the Brinlee case revealed that after entering onto defendant's property the officers saw the first steer in the lot adjoining the barn, which clearly comes within the definition of "curtilage;" however, in the case now before us it was not until after the deputy sheriff had departed from the curtilage where the pipe was pointed out to him. We do not have the question before us concerning the proposition on the admissibility of the evidence, assuming that the pipe had been seen in the adjoining field, while the deputy was standing within the curtilage area. In that instance the evidence would, no doubt, be inadmissible. The record before the Court clearly shows that the pipe was not discovered until the deputy later returned and went into the adjoining pasture outside the curtilage.

■ We are therefore of the opinion that the trial court properly denied defendant's motion to suppress the evidence of the stolen pipe, as well as the photographs taken thereof, as being found in the open field, not within the curtilage of defendant's property.

■ For his second proposition, defendant relies on the validity of his first proposition when he states that it was error for the trial court to overrule his demurrer to the evidence; however, insofar as we have already determined that it was not error when the trial court overruled defendant's motion to suppress, we therefore also conclude that it was not error when the trial court denied defendant's demurrer to the evidence. In this proposition defendant also depends upon the provisions of 22 O.S. § 742, which requires corroboration of the testimony of an accomplice. In this case however, defendant was not an accomplice of the three boys who stole the pipe. We held in Samples v. State, Okl.Cr., 337 P.2d 756 (1959):

> "A person who steals property is not an 'accomplice' of the one who receives the property, knowing it to be stolen, and where there is no pre-arranged plan for one to steal property and deliver the same to another, the one who receives it is not an accomplice of the one who commits the theft."

The state did not attempt to prove a pre-arranged plan on the part of the defendant, likewise, we do not accept defendant's argument as it pertains to the application of 21 O.S.1961, § 1713. The record clearly shows defendant's part in accepting the pipe, directing where it should be placed, and his participation in the handling of the stolen pipe; nor is defendant's application of the provisions of Hanlon v. State, Okl. Cr., 441 P.2d 486 (1968), as set forth in his reply brief acceptable. Again, the testimony showed that defendant led the boys to the place where the pipe was to be unloaded; and, he assisted in handling the pipe during its unloading. It is not necessary for one to actually purchase, or buy, stolen property to come within the provisions of the statute on Receiving Stolen Property. The consideration referred to in the statute may be of many different types. We have reviewed the record closely and believe that the elements of the crime charged in this case were proved. We

have also examined the court's instructions to the jury and find them to be proper.

We are therefore of the opinion that the judgment and sentence of the District Court of Carter County in that court's case number 5972, should be, and the same is therefore, affirmed.

BUSSEY and NIX, JJ., concur.