**Rex BRINLEE, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16977.**

Court of Criminal Appeals of Oklahoma.

July 19, 1972.

Ward, Brown & Perrault, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Rex Brinlee, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma, for the offense of Larceny of an Automobile; his punishment was fixed at a term of not less than four (4) years nor more than twelve (12) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Alfred Harmon testified that he was employed as truck manager for Swinson Chevrolet in Tulsa. On October 17, 1970, he worked at the truck lot from 8 o'clock in the morning until the lot was closed, at approximately 6 p. m. As was the usual custom before closing, Harmon testified that he took the keys from the new trucks and new cars and took them to the main building, which was locked. The following Monday morning, upon arrival at work, he discovered that one set of keys, an ignition key and door key, was missing. He also discovered that a three-quarter ton, mustard and white, pickup with an open

road camper was missing. The serial number of the missing truck was CE 241S607810. The truck was recovered approximately one month later.

Clarence Crutcher testified that he was a salesman for Swinson Chevrolet. On the day in question, he observed Donald Bolding at the lot where Bolding purchased a Volkswagen automobile. His testimony concerning the company policy as to the keys did not differ substantially from the previous witness'.

Don Bolding testified that he purchased a Volkswagen from ·Swinson Chevrolet in Tulsa, on October 17, 1970. He testified that on the afternoon of the day in question, he observed the defendant looking at pickups at the car lot. He observed the defendant for approximately five minutes. The defendant was wearing a brownish colored jacket. He identified State's Exhibit Two as a jacket similar to the one the defendant was wearing. He particularly remembered the defendant looking at a "white over yellow" pickup which had a camper on it.

Wallace Watkins testified that he was a locksmith whose business was located approximately one and one-half miles north of Tahlequah. He testified that some time during the middle part of November 1970, the defendant came to his shop to have some keys made for a 1971 Chevrolet pickup truck. Defendant gave him a duplicate key and a code to enable him to make the key. He made a key, using the code, which would not work in the ignition. He then attempted to make a key from using his duplicating machine, which again did not work. On the third attempt, he made the key by "coding in from the ignition which finally worked." He testified that the truck was "mustard color". He also made a key for the tool box which was located on the right-hand side of the truck. On cross-examination he testified that the defendant came back to his shop one time after the date he made the keys. On re-direct examination, he testified that some time in December, after a Crime Bureau agent had been to his shop, he received a telephone call from the defendant. Defendant stated, " 'Don't let me down or identify the truck' ". (Tr. 202)

Archie Brittan testified that he was employed as a security officer for Northeastern State College at Tahlequah. He testified that some time in November 1970, he was in Wallace Watkins' key shop and the defendant was having some keys made for a mustard colored pickup. The defendant was wearing a tan corduroy coat which resembled State's Exhibit Two.

Lieutenant Menzer of the Oklahoma State Highway Patrol testified that on the evening of December 1, 1970, he and Trooper Harlan Scott were at the intersection of Allen Road and Highway 82 in Cherokee County. At approximately 11 p. m. they stopped a 1971 white over mustard Chevrolet pickup being driven by Beatrice Coppetti. They stopped the pickup because one of the tail lights was out. At this point of the testimony, defendant moved to suppress any evidence regarding the truck and the trial court thereupon conducted an evidentiary hearing outside the presence of the jury. Lieutenant Menzer testified that he received information from Agent Wilkerson of the State Crime Bureau that the truck was stolen and that it had an improper tag on it. He testified that he confirmed that the tag on the truck, RGF–1407, checked to a 1950 Chevrolet pickup truck registered to the defendant. The trial court overruled the motion to suppress. Testimony as to why the truck was stopped did not differ substantially from that given in the evidentiary hearing. He further testified that after the pickup was stopped, the defendant drove upon the scene and had a conversation with Beatrice Coppetti. He personally observed the serial plate on the vehicle had been changed. Agent Wilkerson was called to the scene and checked the hidden serial number on the pickup. This number did not correspond with the serial number found on the plate of the door of the truck. He testified that Beatrice Coppetti worked for

the defendant in his beer tavern in Tahlequah. He further testified that the serial plate which was taken from the door of the pickup was the same as the one registered to the 1950 Chevrolet owned by the defendant.

Agent Wilkerson testified that after receiving a call from Lieutenant Menzer, he proceeded to State Highway 82 and Allen Road. He checked the serial number of the pickup and ascertained that it had been stolen. The vehicle was towed to a body shop in Tahlequah. He and Police Chief Bolding took the identification plate and license tag from the vehicle at the body shop. He testified that they conducted a search of the interior of the vehicle, about thirty minutes after the vehicle was towed to the body shop, and found a brown corduroy coat laying on the seat. He found a receipt in the pocket of the coat made out to the Tab Hotel, which is owned by the defendant. He found two bank bags in the glove compartment of the vehicle which contained tax papers in the name of Tab, Limited, and a title to a 1969 Chevrolet El Camino. The parties thereupon stipulated that Agent Wilkerson would testify that he began his investigation at about 7:20 p. m. on the evening in question and that he had received information from an officer of the Tulsa Police Department that the defendant was in possession of a stolen vehicle. They further stipulated that the vehicle was searched without a search warrant. The parties further stipulated that Noah Orr would testify that he towed the Chevrolet pickup to the body shop and that no person entered the vehicle or put anything in it until the search was made by Agent Wilkerson and Chief Bolding.

Defendant did not testify nor was any evidence offered in his behalf.

■ The first proposition asserts that the court erred in overruling the demurrer to the evidence. Suffice it to say on the foregoing statement of facts, that the evidence, although circumstantial, was sufficient to warrant overruling the defendant's demurrer. In Underhill v. State, 70 Okl.

Cr. 39, 104 P.2d 447, the court cited Cox v. State, 15 Okl.Cr. 133, 175 P. 264, wherein it was stated:

" 'Proof of the possession of stolen property is alone not sufficient to warrant conviction, but where there is other proof supporting the inference sufficient to warrant submission of the issue to the jury, this Court will not disturb their findings thereon.' "

■ The second and third propositions contend that the court erred in instructing the jury regarding presumptive evidence and regarding possession of recently stolen property. The court instructed the jury as follows:

"You are instructed that the unexplained possession of recently stolen property found in the possession of one alleged to have stolen the same is a circumstance, which, if unsatisfactorily explained to the jury, may be considered in determining the guilt or innocence of the person charged with the theft thereof." (Tr. 289)

We are of the opinion that such instruction was proper. In Ballard v. State, 68 Okl.Cr. 39, 95 P.2d 239, we stated:

"We have carefully examined the ten requested instructions offered by defendant, and the general instructions given by the court. Many of the requested instructions were sound principles of law. Many of the suggestions were covered by the general instructions. *The court instructed the jury that the possession of recently stolen property, although unexplained, would not alone warrant the jury in finding the defendant guilty, but was a circumstance which they could take into consideration, together with the other facts and circumstances in the case. But that if the possession was not satisfactorily explained, and it was supported by other incriminating evidence and circumstances, this would be sufficient to warrant a verdict of guilt.* This is in accordance with the decisions of this court. Weber v. State, 29 Okl.Cr. 55,

232 P. 446; Davis v. State, 34 Okl.Cr. 415, 246 P. 651." (Emphasis added.)

 The final proposition asserts that the search and seizure of the defendant's vehicle herein was illegal and in violation of his constitutional rights. Defendant argues that the stopping of the vehicle for a defective tail light was nothing more than a subterfuge. We are of the opinion that the officer had reasonable cause to believe the vehicle was stolen and was justified in stopping it. We further conclude that the subsequent search at the body shop was valid, although conducted without a search warrant. In dealing with a similar question in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, the United States Supreme Court stated:

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house. Compare Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409. But as *Carroll*, supra [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543] held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars."

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

SIMMS and BRETT, JJ., concur.