**Roland Royce FREW, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17463.**

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1972.

William J. Perry, Pawnee, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Roland Royce Frew, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Osage County, Oklahoma, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony; his punishment was fixed at a term of not less than ten (10) nor more than thirty (30) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, David Michael Avery testified that on May 27, 1971 he resided at 508 East Tenth Street in Pawhuska. He left home early in the morning on the 27th day of May to go to Fort Smith, Arkansas. Prior to leaving, he locked all the doors of his house. He returned on the afternoon of May 29 and entered the house through the front door. He walked through the house into the dining room and observed that his gun case door was open and six ri-fles, which had previously been in the case, were missing. Four guns that had been leaning against the wall were also missing. He next observed that the glass in the back door was broken and the back door was standing open. He identified State's Exhibits 4 through 11 as being guns that had been taken from his house.

Donald Fulks testified that on the evening of May 27, 1971 he and Steve Majors were riding around Pawhuska in Majors' car. They picked up the defendant and Guy Hughbanks at Hull's Laundry and continued to drive around. He testified there had been no prearranged plan to pick up defendant and Hughbanks. After some time, Hughbanks stated that he wanted out of the car and Majors stopped the car at Ninth and Revard. The defendant and Hughbanks got out of the car and proceeded north. Majors drove a short distance and stated that he wanted out. Majors got out of the car stating that he should come back and get him in about thirty minutes. He (Fulks) returned to town and continued to drive around. He returned to the location where he let Majors out and attempted to find him. He drove down Tenth Street and observed Majors, Hughbanks and the defendant in the alley at the intersection of Tenth and Revard Street. Majors asked for the keys and unlocked the trunk. They proceeded to load a five-gallon gas can and a rolled up blanket with gun stocks sticking out of it into the trunk. The defendant, Hughbanks and Majors got into the car and they took him straight home.

Steve Majors testified that on the evening in question, he and Donald Fulks were driving around Pawhuska in his car. They picked up the defendant and Hughbanks and continued to ride around. After some time, the defendant and Hughbanks stated that they wanted to get out. He let them out and drove to the Apco Station located at Ninth and Lynn. He testified that he got out because he knew his estranged wife would be driving by the station and he wanted to talk to her. He tes-

tified that he stayed at the station for some time until he heard his car about three or four blocks away. He explained that his car made a real loud noise late at night. He decided that his wife was not coming by and he would just go meet Fulks. He cut across a yard and observed the defendant and Hughbanks running down an alley. He testified that they were carrying the guns wrapped in a blanket. He opened the trunk of his car and Hughbanks put the items into the vehicle. Fulks stated that he wanted to go home and he (Majors) subsequently dropped the defendant off at the Laundry Mat and took Hughbanks home. He testified that the following morning he opened the trunk and observed the rifles and shotguns. He sold State's Exhibit 6, a Browning twelve-gauge shotgun, to one Jim Kerr in Bartlesville for Eighty Dollars. He sold the other guns in Tulsa to Tom Pack for $100. He kept part of the money and gave the rest of it to Hughbanks. He admitted that he had previously received a two-year suspended sentence in Bartlesville for stealing tires.

Deputy Mitchell testified that he investigated the burglary at Avery's residence. On June 3 he had a conversation with Steve Majors at the Washington County Sheriff's Office. He and Majors went to Tulsa that evening and talked to Tom Pack's sister. He obtained permission from Miss Pack to go to a certain motel room in the Flamingo Motel and recovered seven guns. He identified the seven exhibits as being the guns recovered in Tulsa. He identified State's Exhibit 6 as a weapon he received at the Washington County Sheriff's Office from Majors.

Steve Majors was recalled and testified that when he gave Hughbanks the money from the sale of the guns, Hughbanks was in the defendant's vehicle. He testified the defendant and some other boy were also in the vehicle. When he first observed the defendant and Hughbanks in the alley, Hughbanks was carrying the guns and the defendant was carrying a gas can.

The defendant did not testify nor was any evidence presented in his behalf.

In the second stage proceeding, testimony was introduced to reflect that the defendant had previously been convicted of Burglary in the Second Degree.

The first proposition asserts that the court erred in overruling defendant's motion for new trial "after proof that the plaintiff-in-error's trial attorney stated to the plaintiff-in-error's father in the presence of some jurors during a recess 'if he hadn't raised such a hooligan son, he wouldn't have been here.'" At the motion for new trial, the defendant, his brother and his father testified that the conversation between the defendant's trial attorney and the father took place prior to final submission of the case to the jury. They testified that there were several jurors in the area that could have heard the conversation.

Raymond Stith, the defendant's trial attorney, testified that the conversation occurred after the jury had returned a verdict of guilty. He testified that the conversation was very subdued and that "to the best of my knowledge, I don't think there were any jurors around that could hear any conversation with Mr. Frew."

Deputy Freeman testified that he was in the anteroom and heard part of the argument between the defendant's trial attorney and his father. He testified that there were no jurors present and that the argument occurred while the jury was in the juryroom deliberating.

Deputy Mitchell testified that he was in the anteroom and overheard part of an argument between Mr. Stith and the defendant's father. He testified that there were no jurors present in the room and that the argument was "real quiet." He did observe two jurors at the coffee bar; however, the doors between the anteroom and coffee bar were closed.

In Still v. State, Okl.Cr., 484 P.2d 549, Judge Nix stated in the second syllabi:

"The burden is on the defendant to show that there was an authorized communication with the jury during its deliberation; and the claim of an unauthorized communication absent proof of such will not form a basis for the granting of any relief."

In the instant case, the testimony offered by the defendant at the motion for new trial reflected merely that several of the jurors could have heard the conversation between the defendant's attorney and his father. None of the jurors were called to testify that they did in fact hear such conversation. We therefore find that the defendant did not meet the burden to show that there was an unauthorized communication with the jury.

The second proposition asserts that the trial court erred in overruling the defendant's demurrer in that the evidence was insufficient to convict the defendant since such evidence was circumstantial and did not exclude every other reasonable hypothesis other than the guilt of the defendant. From the foregoing statement of facts, we are of the opinion that there was competent evidence, although circumstantial, from which the jury could reasonably conclude that the defendant was guilty as charged. We therefore find this proposition to be without merit.

The third proposition asserts that the court erred in overruling defendant's demurrer and in overruling the motion for new trial based upon the fact that the evidence used to convict was only that of accomplices and therefore insufficient. The defendant contends that both Donald Fulks and Steve Majors assisted in the commission of the crime and, therefore, were both accomplices. We cannot agree with this contention. Donald Fulks testified that he and Steve Majors were riding around Pawhuska in Major's automobile and subsequently picked up the defendant and Hughbanks. No prior arrangement had been made to meet either the defendant or Hughbanks. After riding around for a while, Hughbanks stated that he wanted to get out and both the defendant and Hughbanks departed the vehicle. Majors proceeded down the street, stopped the vehicle and departed, instructing Fulks to return in thirty minutes. Fulks subsequently returned to the vicinity looking for Majors and observed the defendant, Hughbanks and Majors in the alley. Majors asked for the trunk key, whereupon a blanket, covering what appeared to be guns, and a gasoline can were loaded in the trunk. Thereafter, Fulks asked to be taken home and was thereupon taken directly home. There was a total lack of evidence that Fulks knew of the plan of the defendant and Hughbanks to commit a crime nor did he aid and abet them after the crime was committed. The testimony of Steve Majors was substantially the same as that of Fulks. Majors testified that he got out of his vehicle at the gas station hoping to meet his estranged wife and that he had instructed Fulks to return for him in thirty minutes. He remained at the service station until he heard the roar of his automobile. He started in its direction and came upon the defendant and Hughbanks. Again, there was no evidence of a prearrangement between Majors and Hughbanks or the defendant in receiving the stolen guns which he subsequently disposed of. In Hunsucker v. State, Okl.Cr., 475 P.2d 618, Judge Brett stated:

"* * * In this proposition defendant also depends upon the provisions of 22 O.S. § 742, which requires corroboration of the testimony of an accomplice. In this case however, defendant was not an accomplice of the three boys who stole the pipe. We held in Samples v. State, Okl.Cr., 337 P.2d 756 (1959):

'A person who steals property is not an "accomplice" of the one who receives the property, knowing it to be stolen, and where there is no pre-arranged plan for one to steal property and deliver the same to another, the

one who receives it is not an accomplice of the one who commits the theft.' "

We, therefore, find this proposition to be without merit.

■ The fourth proposition contends that the court erred in overruling the defendant's demurrer and in failing to grant a new trial based upon the fact that the evidence at most, was uncorroborated evidence of mere possession of stolen property by the defendant and insufficient to convict of burglary. We are of the opinion that the evidence placing the defendant in the immediate area of the scene of the crime together with the possession of stolen property is sufficient to connect him with the actual breaking and entering. See Cheatham v. State, Okl.Cr., 483 P.2d 1172.

The fifth proposition asserts that the court erred in failing to grant a new trial based upon improper remarks made by the prosecuting attorney in his closing argument. We have carefully examined the alleged improper remarks and are of the opinion that the same are not flagrant and of such a nature that they constitute reversible error. See Montgomery v. State, Okl.Cr., 447 P.2d 469.

■ The sixth proposition asserts that the trial court gave an improper instruction which is not a correct statement of the law under the facts. The alleged improper instruction reads as follows:

"You are instructed that the mere possession of stolen property does not create any presumption of guilt, but it is a circumstance which if not satisfactorily explained raises a strong inference of guilt and such inference, together with all the other facts and circumstances attending the taking and connected with the possession, are questions for the jury. The circumstances of each particular case must be, of necessity, different and while possession of stolen property in one case may not warrant a verdict of guilty, yet, where the larceny is proven beyond question, the stolen property found in possession of the accused and he exercising acts of ownership and control over and claiming it, and the explanation given by him is not a reasonable or satisfactory one, and the conduct and character of the accused in connection therewith are such as to arouse suspicions, such facts and circumstances are to be considered in connection with all the other facts and circumstances in evidence in determining the guilt or innocence of the accused."

In the recent case of Brinlee v. State, Okl.Cr., 499 P.2d 1397, in dealing with a similar proposition, we stated:

" * * * We are of the opinion that such instruction was proper. In Ballard v. State, 68 Okl.Cr. 39, 95 P.2d 239, we stated:

'We have carefully examined the ten requested instructions offered by defendant, and the general instructions given by the court. Many of the requested instructions were sound principles of law. Many of the suggestions were covered by the general instructions. *The court instructed the jury that the possession of recently stolen property, although unexplained, would not alone warrant the jury in finding the defendant guilty, but was a circumstance which they could take into consideration, together with the other facts and circumstances in the case. But that if the possession was not satisfactorily explained, and it was supported by other incriminating evidence and circumstances, this would be sufficient to warrant a verdict of guilt.* This is in accordance with the decisions of this court. Weber v. State, 29 Okl.Cr. 55, 232 P. 446; Davis v. State, 34 Okl.Cr. 415, 246 P. 651.' (Emphasis added.)"

Although there was no testimony that the defendant was actually carrying the guns, the evidence did reflect that he was running down the alley with the Co-defendant Hughbanks who was carrying the guns wrapped in a blanket. Under such facts

and circumstances, we are of the opinion that the instruction was proper.

■ The final proposition contends that the defendant was denied effective assistance of counsel. It has long been recognized by this Court that one can successfully assert that he has been denied effective assistance of counsel only if the trial considered as a whole was a mockery of justice, sham or farce. Parks v. State, Okl.Cr., 457 P.2d 818. In Franklin v. State, Okl.Cr., 409 P.2d 13, Judge Nix stated:

> " '* * * When an attorney is appointed by the court to defend a person accused of crime who is unable to employ counsel, it is his duty to do so, and it is to be presumed that he will discharge his full duty in the premises. It is also to be presumed that the court, in appointing counsel for this purpose, will appoint attorneys who have sufficient skill and learning to defend the accused properly. Instances in which counsel prove unfaithful to the duty thus imposed upon them, if they occur at all, are very exceptional. Attorneys are generally men of upright character. In order to be admitted to practice, they are required to satisfy the court that they are of good moral character, as well as that they have the requisite learning.'

"And, further,

> 'We think that before a court should grant a new trial upon the ground that counsel have failed to do their duty in this respect, there should be strong and convincing proof to overcome the presumption to the contrary.' "

In the instant case, the defendant has failed to show by convincing proof that he was denied effective assistance of counsel. To the contrary, the record reflects that the defendant's trial attorney has been engaged as a practicing attorney some thirty years and had actually tried more than 100 criminal cases. This is again one of the sad cases where the attorney had very little with which to work.

■ In conclusion, we observe that based upon all the surrounding circumstances, justice would best be served by modifying the judgment and sentence to a term of ten (10) years imprisonment and as so modified, the judgment and sentence is affirmed. Modified and affirmed.

BRETT, J., concurs.