[Crim. No. 4468.   Second Dist., Div. One.   Oct. 17, 1950.]

THE PEOPLE, Respondent, v. GAIL VINCENT WHISNER, Appellant.

Fred G. Kennedy for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

DRAPEAU, J.—Defendant was charged by information with the crime of burglary.   The court sitting without a jury found him guilty as charged, and fixed the degree of the crime as first degree.   Defendant's motion for a new trial was denied; judgment was pronounced, and he was sentenced to the county jail for a term of one year.   Execution of such sentence was suspended and defendant was granted probation for two years upon condition that he serve the first five months thereof in the county jail.   He here appeals from the judgment of conviction and from the order denying him a new trial.

It is here urged that the judgment is contrary to the law and the evidence; that the evidence is insufficient to sustain the judgment and the court erred in the admission of evidence.

The main contention appears to be that the evidence is insufficient to identify the articles found in appellant's possession as those stolen from the burglarized house.

The record discloses that on August 13, 1949, Mr. R. H. Galle left his home in Los Angeles around 7:40 p. m. At that time the house was locked, including the front door. When he returned about 11:30 that night, he found the screen had been removed from a back window and left on the ground, and that the front door, although closed, was unlocked. Mr. Galle's daughter returned home a few minutes before he did, and upon examination they found that two cameras, a light meter and a radio were missing from the house. They both testified that they had not given permission to appellant or to anyone else to enter their home and remove the stated articles.

On August 20, 1949, appellant was arrested in a barbershop having in his possession a camera and a light meter. He had offered the camera for sale at $35 with the statement that it was worth $110. This camera was introduced in evidence. Mr. Galle was asked if he recognized it as the one stolen from his house. He stated: "Well, it is one just like it. I couldn't swear until I see the serial number. . . . I have taken pictures with it. It is my daughter's camera." He then explained that he did not know where the serial number appeared on the camera, but he had asked the May Company to look it up (apparently from the record of the purchase) and he had the serial number on paper.

His daughter, Rosalie, testified that the camera "is an Argus C-3 just like mine." That its distinguishing mark was a serial number. As to the light meter, she stated it looked like hers but she could not prove it "because there are thousands of those."

Appellant took the stand in his own defense and stated that while he and one Vivian Moran were drinking a bottle of beer at the Spring Arcade cocktail bar on August 19, 1949, Miss Moran gave him the camera, stating that if he could sell it for her he could have all over $30 he might get for it; that it was understood that they would meet at the same place the next night.

Appellant further stated that the next day he came downtown about 3 o'clock in the afternoon, and went to a barbershop near First and Los Angeles Streets. Just as he was about

to make a sale of the camera to Richard Nakano for $35, police officers came into the shop, questioned him about the camera and later placed him under arrest. He stated he had known Vivian Moran for two and a half or three years; that they had gone to a couple of shows together and to several bars; that he never made any specific dates with her, "it was just a matter of running into each other"; that he left her where he found her and did not know what occupation she pursued, nor where she lived. He also stated that he had been in the Spring Arcade cocktail bar "maybe a hundred times" before his arrest; that he knew the bartenders there by sight but not by name, and that he had tried to locate Miss Moran but without success.

The record shows that at the time of his arrest, appellant gave to Police Officers Sherrill and Barry the same explanation regarding his possession of the camera.

The instant trial took place on November 4, 1949. In answer to the trial court's questioning, appellant testified he had been out on bail since September 14, 1949; and admitted that he had made rounds of the various cocktail bars, including the Spring Arcade, only twice since his arrest; that he then made inquiries as to the whereabouts of Vivian Moran but to no avail; that the bartender at the Spring Arcade told him her name sounded familiar but that he would have to see her to remember her.

*People* v. *Williams*, 27 Cal.2d 220, 223 [163 P.2d 692], was a prosecution for stolen turkeys. There, as here, appellant attacked the sufficiency of the evidence because of failure to prove that the three turkeys found in his possession were the turkeys stolen from the butcher shop. One of the prosecuting witnesses testified that "after having handled a turkey, he would know it later by just looking at it." In addition he identified a tag of ownership introduced in evidence and found on one turkey in appellant's possession. The court there stated (p. 227): "While it must be conceded that there is some confusion in the evidence on this issue and the record is not so clear as might be desired, still the sufficiency of the identification of the stolen property and the reconciliation of any discrepancies in the respective witnesses' statements at the trial were for the jury. . . . [I]t was for the jury to determine whether or not to accredit defendant's entirely uncorroborated account of his previous purchase of the turkeys in his possession at the time of his arrest. 'If it were the rule

that trial judges or juries must decide cases in conformity with the defendant's testimony, few criminals would ever be convicted.' (*People* v. *Rose,* 26 Cal.App.2d 513, 517 [79 P.2d 737].) As was said in *People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467], with regard to the function of an appellate court in reviewing the correctness of factual determinations made in the course of a criminal trial: 'This court has uniformly held that where there is evidence tending to support a verdict we cannot disturb the verdict upon the ground it is not sustained by the evidence; and the application of this rule is strengthened in a case where, as here, the trial court has refused a new trial. It is settled beyond controversy that the weight to be accorded the evidence is a question for the jury.' ''

In the instant cause, Mr. Galle testified that the camera found in appellant's possession was the same type of camera that was missing from his home, and he positively stated: ''I have taken pictures with it. It is my daughter's camera.'' He further stated that he had seen appellant in the vicinity of his (witness') home ''off and on for the last six months, perhaps once a month. . . . I walked back and forth to the store there, and I would see different ones with him. . . . That is about 100 feet from my house.'' That he first saw appellant at a fire in the neighborhood; and the last time he saw him was about two months before the burglary.

While the evidence of identification is comparatively slight, appellant's presence in the neighborhood is an important circumstance, not to be treated merely as a coincidence. This evidence together with the testimony and statements of appellant in his attempt to account for his possession of the camera, was sufficiently substantial to connect him with the crime charged and to support the judgment of conviction.

In announcing his decision at the end of the trial, the trial court made some very pertinent comments: That appellant's explanation showed a complete lack of substantiality in that when he got out of jail on September 14th, he made no effort to even look for Vivian Moran until October 24th, a month and ten days later. And this in the face of the fact that he was charged with stealing the camera and would find her a very material witness to substantiate his claim of innocence.

The judgment and order appealed from are, and each of them is, affirmed.

White, P. J., and Doran, J., concurred.