**Craig E. SIMS, Appellant,**

v.

**The STATE of Wyoming, Appellee.**

**No. 3964.**

Supreme Court of Wyoming.

April 17, 1972.

See also 495 P.2d 256.

186

John L. Vidakovich, of Vidakovich & Barney, Lander, Frederick E. Dickerson, Denver, Colo., for appellant.

Clarence A. Brimmer, Atty. Gen., Richard A. Stacy, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

McINTYRE, Chief Justice.

Craig E. Sims, defendant, was charged with two counts of murder in the first degree in connection with the death of two teenage girls. The victims had been killed by stabbing and their bodies partially buried or hidden near Lander, Wyoming. Sims was 17 years of age at the time the killings took place.

A trial to a jury was had, on change of venue to Washakie County, and the defendant was found guilty of murder in the second degree. The matter is before us on appeal from the conviction and sentence of the trial court.

Three assignments of error are advanced on behalf of appellant in the appeal. They are:

1. There was insufficient evidence to support a conviction of second degree murder.

2. The trial court committed prejudicial error by allowing all prospective jurors who were irrevocably opposed to the death penalty to be challenged for cause and excluded from the jury.

3. The trial court erred by allowing testimony from a witness who was under the influence of drugs when an admission was allegedly made to him by the defendant. In connection

with this assignment, it is also suggested that the defendant lacked sufficient mental capacity to make an admission.

We fail to find support in the record for any of the assignments urged on behalf of the appellant. Although we will not purport to quote from the record in exhaustive detail, we will point out reasons for affirming the defendant's conviction.

### Sufficiency of Evidence.

There was evidence that the girls who were later killed were seen alone with the defendant in his automobile during the evening of November 1, 1968, on the streets in Lander, Wyoming. No one ever saw them alive after that. The body of one of the girls, Vicki Mather, was discovered April 4, 1969, near a rural road. It was partly buried and concealed in underbrush. The body of the other girl, Dee Ann Smith, was found the next day in a drain ditch six-tenths of a mile from the first body.

Although the police at first considered the girls to be missing persons and perhaps runaways, they nevertheless investigated. When inquiry was made of Sims, he denied having seen the girls at all on the evening of their disappearance. After he was confronted with the stories of witnesses who had seen the girls with him in his car, the defendant changed his story and claimed he had let the girls out of his car at Ninth and Main Streets in Lander.

Also, there were two witnesses who had observed Sims on the night of the killings emerging from the brush at the place where the Mather body was subsequently found. These witnesses knew Sims and spoke briefly with him. He claimed he was looking for some stashed-away whiskey.

When the defendant was accused of the slayings here involved, he was placed in a cell in the juvenile section of the county jail. The cell was next to one occupied by Ronnie Ash, another youth who was approximately the age of Sims. The cells were such that the youths could not see each other but they could converse. According to the testimony of Ash, he and Sims talked for several hours during the evening after Sims was incarcerated, and into the early morning hours.

During the course of this conversation, Ash testified, Sims described to him the killing of Vicki Mather and Dee Ann Smith and told Ash that he had thought about the killings before; that he stabbed the girls; that he knew he had to get the first one right good because the second one would become aware of it; that the first one had to be complete because the other one would have knowledge of it and he would have to handle her next. Ash also claimed Sims told him about having kept his weapon under the seat of his car. The defendant, testifying in his own behalf, admitted he kept a hunting knife in his car.

■ In view of the rule that an appellate court will give consideration only to the evidence favorable to the side which prevailed at the trial and disregard contrary evidence,[1] we have recited sufficient from the evidence to show that a case for the jury was made out and there was ample evidence for the jury to find Sims guilty of murder in the second degree.

■ There can be no dispute or doubt about the death of the two girls in this case. Neither can it be doubted that they were killed by stabbing and their bodies concealed. Thus, the corpus delicti, i. e., death and the criminal agency of another as the cause, was established without contradiction.[2] Also, when the circumstantial evidence we have reviewed above is considered with the testimony of Ronnie Ash that Sims admitted and described the killings to him, the overall evidence was clear-

1. See *Harris v. State,* Wyo., 487 P.2d 800, 801; X v. Y, Wyo., 482 P.2d 688, 690; and *Stock v. Roebling,* Wyo., 459 P.2d 780, 784.

2. See *Alcala v. State,* 487 P.2d 448, 451, reh. den. 487 P.2d 467, cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. den. —— U.S. ——, 92 S.Ct. 1613, 31 L.Ed.2d 823.

ly sufficient not only to establish the corpus delicti but also to establish the defendant's connection with the crime and to make a case for the jury.[3]

We realize the attorneys for appellant, in their third assignment, are contending the testimony of Ash should not have been admitted. Their argument, as we understand it, pretty well comes down to a contention that the testimony of Ash should have been excluded; and if it is excluded there would not then be sufficient other evidence to sustain the conviction of Sims. Inasmuch as we are not agreeing that the testimony of Ash should have been excluded, we need not decide whether the other evidence standing alone would have been sufficient for a conviction. Our reasons for allowing the Ash testimony to stand will be discussed in connection with appellant's third assignment.

### The Jury

Regarding the assignment that the trial court erred in allowing certain prospective jurors to be challenged for cause, the attorneys on either side had a lengthy discussion with the judge, in chambers, about the right to challenge jurors for cause who did not believe in capital punishment. All of the attorneys seemed to agree the case of Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, was controlling. The trial judge assumed, and we agree, there is nothing in the *Witherspoon* case which denies the right of the prosecution to challenge for cause those prospective jurors who say they could never vote to impose the death penalty. On the other hand, the case does condemn the dismissal of veniremen merely because they do not believe in capital punishment and acknowledge that they have conscientious or religious scruples against the infliction of the death penalty.

■ In keeping with the view announced by the trial judge, he excluded only veniremen who said they could never vote to impose the death penalty. He did not exclude those who merely said they did not believe in capital punishment and had conscientious or religious scruples against inflicting the death penalty. We find this position consonant with pronouncements in the *Witherspoon* case and we approve the action of the trial court in the selection of jurymen on the basis indicated. It is noted in particular, at 88 S.Ct. 1774–1775, the court stated it could not conclude, either on the basis of the record before it or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction.

■ Before leaving the *Witherspoon* case, we wish to point out that the court declined to reverse the verdict of guilty, holding only that the death penalty would be set aside. In the case we are dealing with, the matter of a death penalty was eliminated when the jury returned a verdict of guilty in the second degree. This leaves appellant with no reason to complain at this time because he is not facing a death sentence.

In Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 1790, 20 L.Ed. 2d 797, the court specifically held:

> "Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment."

In view of what has been said, we find no merit in appellant's assignment that the trial court erred by allowing all prospective jurors who were irrevocably opposed to the death penalty to be challenged for cause. Counsel for appellant did not see fit to discuss this assignment at the oral argument.

### Ash Testimony

In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 1611, 16 L.Ed.2d 694, 10 A.L.R.3d 974, reh. den. 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121, recognition

---

3. See our opinion in the *Alcala* case at 487 P.2d 452.

was given to the fact that admissions or confessions of the prisoner, when voluntarily and freely made, has always ranked high in the scale of incriminating evidence. Also, in 22A C.J.S. Criminal Law § 730, p. 1025, it is stated as a general rule:

"Statements, declarations, and admissions by accused from which an inference of guilt may be drawn are admissible in evidence against him."

It is the contention of appellant that Ash was under the influence of drugs when Sims' admission was made to him and that Ash should not therefore be allowed to testify. We should point out that one of the attorneys for Sims cross-examined Ash very extensively about his use of drugs and the matter was before the jury with no restrictions on the defense's inquiry concerning the matter.

The witness admitted freely that he had been using various kinds of drugs for several years; that they had ill effects, sometimes causing hallucinations and impairing one's memory to a "degree." However, he had been in jail two weeks before Sims came in. At the time he came into the jail, he had been searched and his injection machine had been taken from him. He went through certain withdrawal pains, and, as he explained, was getting fairly well over such when Sims came to jail.

After Sims was incarcerated, Ash smoked hashish (a derivative of marijuana) in a pipe which was passed back and forth between Sims and himself. He admitting getting "high" on the drug after a time. The witness testified nevertheless that he thought he always knew what he was saying; and that there was no question about his recollection of the conversation testified to. The witness several times claimed he was relating only those facts he was sure of. Several times he declined to testify to things which he said he was not sure about because, as he explained, he was under oath.

In United States ex rel. Lemon v. Pate, 7 Cir., 427 F.2d 1010, 1014, it was said of a witness who was a user of drugs, the court had ample opportunity to consider the competency of the witness and must have been satisfied in that respect. In our judgment, the court said, the fact that the witness was an addict was a matter to be considered in connection with his credibility and the weight which should be given to his testimony but not his competency.[4]

Also, there was a question pertaining to the admissibility of testimony offered by a witness in United States v. Hicks, 3 Cir., 389 F.2d 49, 50. The witness admitted she used drugs. Also, there were questions about her mental imbalance and her moral character. The court held, the competence of a witness is a matter to be decided in the trial court's sound discretion.

We consider the testimony of Ash, in the case before us, to be competent and admissible, as long as the trial court in its sound discretion saw fit to admit it. The credibility of the witness and the weight to be given such testimony were matters for the jury to decide.[5]

Although the defense brief suggests the defendant lacked sufficient mental capacity to make an admission at the time he talked to Ash, no evidence of insanity was offered. The attorney who orally argued appellant's case on appeal admitted it was decided at the last minute not to rely on that defense. He explained that the defense did not go on with an insanity plea because there were too many grey areas— because sometimes the defendant was sane and sometimes he was not. In any event, the attorney stated, he took the responsibility and elected not to offer evidence of insanity.

Prior to receiving testimony as to the admissions which Sims made to Ash, the trial court held a lengthy hearing in chambers, out of the presence of the jury. The court was aware of the medical, pyschi-

---

4. See Annotation 52 A.L.R.2d 848, 859.

5. See State v. Lindsay, 77 Wyo. 410, 317 P.2d 506, 512; and Cederburg v. Carter, Wyo., 448 P.2d 608, 611.

atric, and psychological reports contained in the record. In fact, the same judge had previously admitted such reports in connection with a hearing pertaining to the triability of defendant.

Not only has there been an absence of any showing that defendant was insane when he talked to Ash, but there was ample evidence from which the trial court could find the defendant sane at that time. Therefore, the suggestion that the defendant lacked sufficient mental capacity to make an admission to Ash, when he talked to him, is not supported by the record.

As we indicated at the beginning of this opinion, we fail to find reversible error in connection with any of the assignments urged on appeal. The conviction, judgment and sentence of the trial court must therefore be affirmed.

Affirmed.