Ernest **WASHINGTON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–345.

Court of Criminal Appeals of Oklahoma.

Aug. 17, 1976.

W. A. Bolding, Hobart, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Ernest Washington, hereinafter referred to as defendant, was charged in the District Court, Kiowa

County, Case No. CRF–75–28, with the crime of Burglary in the Second Degree in violation of 21 O.S.1971, § 1435. He was tried by jury, convicted and punishment was assessed in accordance with the verdict of the jury at a term of three (3) years in the Oklahoma State penitentiary. From said judgment and sentence, a timely appeal has been perfected to this Court.

The first witness to testify for the State was Robert Naething, co-owner of the Affiliated Food Liner in Roosevelt, Oklahoma. He testified that in the early morning of July 9, 1975, he learned that the store had been burglarized. Upon his arrival at the store he found "the front door had been busted." He further testified that there was blood on the door and a trail of blood in the aisles. Also, cigarette packages were scattered throughout the store and the cash registers were open.

Jenny Elix testified that on the night of July 8, 1975, she was working in Rube's Cafe in Roosevelt. She stated that the defendant was in the cafe for approximately 30 minutes, accompanied by Paul Norris, D. L. Dorsey, and Jerry Jackson. At approximately 11:15 p. m. they left in a blue Chevrolet. Shortly thereafter she closed the cafe and as she was driving away she noticed a blue Chevrolet traveling in front of her. The street they were traveling was the same street on which the Affiliated Food Liner was located.

The next witness to testify for the State was Jan Wilson who testified that on July 8 she was riding with her husband in Roosevelt when she noticed two black males standing near a school bus. When they again drove by, the two men hid behind a tree. Then, a blue car stopped close by and the two men got in. She stated that this occurred between the time of 11:15 p. m. and 11:30 p. m., and was in an area which was approximately one block from the Food Liner. On cross-examination she stated that she did not know the defendant and could not identify him as one of the men she saw.

Pearl Banks, who resided in Hobart on the day in question, testified for the State and related that the defendant left her house at approximately 9:30 p. m. on July 8, with three other men in a blue car belonging to a Lonnie Norris. At approximately 3:30 a. m. the next morning, Jerry Jackson, one of the men who had earlier left with the defendant, returned carrying a package of steak and asked to have it cooked. Then the defendant came into the house carrying a package of liver. Both packages were placed in the refrigerator. Jerry Jackson and the defendant remained in and around the Banks' house until sometime after daylight. Ms. Banks stated that she did not know anything about the burglary and that later in the morning of July 9, Sheriff Henderson confiscated both packages of meat.

Herb Henderson, Sheriff of Kiowa County, testified for the State that he investigated the burglary of the Food Liner grocery store. He arrived at the store at approximately 4:45 a. m., July 9, and observed that the glass had been broken out of one of the doors, with spatterings of blood being noticeable inside the store and on the door, and that cigarette packages were strewn on the floor near the door. He confirmed that he went to Pearl Banks' home in Hobart and confiscated two packages of meat, one steak and one liver, from her refrigerator.

He further testified that he had learned that the defendant, Jerry Jackson, Paul Norris and D. L. Dorsey had been observed driving in Roosevelt on the night of the burglary. He arrested the defendant and Jerry Jackson, but not Paul Norris or D. L. Dorsey. When Jackson was arrested the Sheriff noticed that he had a cut on the little finger of his left hand. On cross-examination the Sheriff stated that his records showed that he had arrested the defendant on July 9 for public drunkenness.

William Beard was the last witness to testify for the State. He testified that he was a co-owner of the Affiliated Food

Liner and also was the butcher. He further testified that he arrived at the store on the morning of the 9th of July to survey the damage to the store. He identified two State's Exhibits, the packages of meat recovered from Pearl Banks' refrigerator, as meat which he had cut and packaged the day of the burglary. He was able to identify the packages because of the Food Liner labels attached thereto.

Three witnesses testified for the defendant. The first, Jerry Jackson, testified that he was serving three years in the Granite Reformatory after pleading guilty to burglarizing the Food Liner. He further testified that he alone broke into the store, and that while the burglary was taking place the defendant was sleeping in the car. According to Jackson, the defendant was asleep as Jackson drove to Hobart to Pearl Banks' house. He testified that when he woke the defendant and told him what he had done the defendant said, "Man, I don't want to have nothing to do with it." He also stated that the defendant did not carry a package of meat into Ms. Banks' house.

On cross-examination he reiterated that he committed the burglary by himself; he denied being one of the men seen near a school bus by another witness; and, he denied making statements that the defendant kept any property stolen from the Food Liner grocery store. On re-direct examination, he stated that he signed a statement concerning the burglary, but stated he did not write it.

Paul Norris testified that on the night in question he, D. L. Dorsey, Jerry Jackson and the defendant were in Roosevelt but were not involved in the burglary of the Food Liner grocery. His testimony was that after they left Rube's Cafe they drove to Hobart. On cross-examination he stated that he was driving his brother's blue 1967 Chevrolet and he denied picking up two men near a school bus in Roosevelt.

D. L. Dorsey was the last witness to testify for the defendant. He basically corroborated the testimony of Paul Norris and added that he had been drinking that night.

The State called a rebuttal witness, Anthony Pitt, Undersheriff of Kiowa County, who testified that he visited Jerry Jackson at the Granite Reformatory concerning the burglary of the Food Liner. He also testified that Jackson told him the defendant helped unload the items taken in the burglary and that the defendant was to bring some cigarettes to the jail for him. He stated that this information was included in the statement signed by Jerry Jackson.

The defendant's sole assignment of error is that the State's evidence is insufficient to prove that the defendant committed the crime of burglary in the second degree as charged in the information. The information charges that the defendant and Jerry Jackson acted in concert to break and enter into the Food Liner with the intent to steal property within. It is to be remembered that Jerry Jackson pled guilty to such charge and was serving a three year prison sentence at the time of the defendant's trial.

■ Burglary is the unlawful breaking and entering of a building "with intent to steal any property therein or to commit any felony . . ." 21 O.S.1971, § 1435. It was incumbent upon the State to prove the elements of the crime of burglary in the second degree either by direct or circumstantial evidence, or both. The defendant argues that although the State's evidence was sufficient to show that there was an unlawful breaking and entering, that the defendant was connected with the stolen property, and he was in the town where the burglary occurred, there was not sufficient evidence to prove the defendant committed the burglary or that he aided, abetted, assisted or advised, or procured others to commit the crime.

Title 21 O.S.1971, § 172 provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense,

or aid and abet in its commission, though not present, are principals."

Therefore, if there is evidence to show that defendant was connected with the commission of the burglary he will be deemed a principal, and liable for the crime.

■ There was evidence by the State to prove that the defendant was in possession, a few hours after the burglary, of a package of meat which was taken. from the Food Liner grocery store. Although such evidence is insufficient to make one guilty of burglary, it is a circumstance that can be considered by the jury, providing there is additional testimony even though slight to show supporting facts or circumstances to connect the defendant with the original breaking and entering. See, *Henley v. State*, Okl.Cr., 371 P.2d 928 (1962).

■ In regard to whether or not the defendant committed the burglary, it is not necessary that the State prove the defendant actually accomplished the required illegal breaking if the State clearly proves that an illegal breaking and entering was accomplished by one or the other of the two men. See, *Pollard v. State*, Okl.Cr., 528 P.2d 1121 (1974), and *Henson v. State*, Okl.Cr., 500 P.2d 859 (1972). It was clearly shown as the defendant concedes that there was an unlawful breaking and entering into the Food Liner. More importantly, there was evidence to connect the defendant with such breaking and entering. The State presented evidence that the defendant was seen in Roosevelt on the night the burglary occurred. The defendant was placed at the scene of the crime by the testimony of Jerry Jackson, although Jackson testified that defendant was sleeping in the car at the time he was committing the burglary.[1] Therefore, the evidence placing the defendant in the area of the scene of the crime, together with possession of stolen property, is sufficient to connect him with the actual breaking and entering. *Frew v. State*, Okl.Cr., 503 P.2d 900 (1972); *Cheatham v. State*, Okl.Cr., 483 P.2d 1172 (1971). In contrast, the defendant contends that his evidence explained the commission of the crime, in that Jerry Jackson alone committed the burglary. This argument goes to the weight of the evidence for the State and the defense. In *Starks v. State*, Okl.Cr., 510 P.2d 1389, 1392 (1973), the applicable rule in this situation was stated as follows:

". . . Where there is competent evidence in the record from which the jury can reasonably conclude the defendant guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is sharp conflict in the evidence and different inferences may be drawn therefrom, as it is the exclusive province of the jury to weigh the evidence and determine the facts. . . ." (Citation omitted)

Therefore we look to another rule repeatedly followed by this Court: That where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the jury's determination upon the grounds that evidence is insufficient to sustain the verdict. See, *Sharp v. State*, Okl.Cr., 510 P.2d 1401 (1973). We conclude that there was sufficient evidence to prove that the defendant committed the crime as charged in the information, and for this Court to allow the jury's verdict to stand. The judgment and sentence appealed from should be, and the same is hereby, *AFFIRMED*.

BLISS, J., concurs.

BRETT, P. J., dissents.

---

1. This testimony of Jerry Jackson was presented after defense counsel's demurrer to the State's evidence was overruled. In light of *Smith v. State*, Okl.Cr., 509 P.2d 1391 (1973), an examination of the entire record is proper in considering the sufficiency of the evidence.