**Arthur James DOWNS, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4729.**

Supreme Court of Wyoming.

July 13, 1978.

—

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Stephen R. Johnson, Student Intern, Wyoming Defender Aid Program, Laramie, signed the briefs and appeared in oral argument on behalf of the appellant.

V. Frank Mendicino, Atty. Gen., and Frank R. Chapman, Asst. Atty. Gen., signed the brief and Allen C. Johnson, graduate law student and legal intern, Cheyenne, appeared in oral argument on behalf of the appellee.

Before RAPER, THOMAS and ROSE, JJ., J. F. MAHONEY, District Judge, and J. REUEL ARMSTRONG, District Judge, retired.

RAPER, J. delivered the opinion of the court, in which THOMAS, J. and MAHONEY, District Judge, joined. ARMSTRONG, District Judge, retired, filed a dissenting opinion, in which ROSE, J., joined.

RAPER, Justice.

After a jury trial, the appellant was found guilty of burglary in violation of Section 6–129, W.S.1957, [Section 6–7–201, W.S.1977].[1] The issues are:

1. Whether the appeal was timely taken.
2. If the appeal is properly before us,
   (a) Whether the evidence was, as a matter of law, sufficient to sustain a conviction for burglary;
   (b) Whether instructions by the trial court, with drunkenness as a legal excuse for crime, misstated the law and are contradictory.

We will hold the appeal to have been timely taken and affirm.

## NOTICE OF APPEAL

After the judgment and sentence was filed herein, appellant timely moved for a judgment under Rule 30(c), W.R.Cr.P., or, in the alternative, for a new trial pursuant to Rule 34, W.R.Cr.P. Before an order denying these motions was entered, appellant filed his notice of appeal. This court on its own motion questioned timeliness of the appeal and called for briefs by the parties.

According to Rule 38, W.R.Cr.P., criminal appeals to this court are to be taken within the time and in the manner provided by the Wyoming Rules of Civil Procedure. Rule 73(a), W.R.C.P., provides in pertinent part:

"(a) *How and When Taken.* An appeal permitted by law from a district court to the supreme court shall be taken by filing a notice of appeal with the district court within thirty days from the entry of the judgment or final order appealed from and serving the same in accordance with the provisions of Rule 5, unless a different time is provided by law, except that: (1) Upon a showing of excusable neglect the district court in any action may extend the time for filing the notice of appeal not exceeding thirty days from the expiration of the original time herein prescribed; (2) if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within fourteen days of the date on which the first notice of appeal was filed, or within the time otherwise herein prescribed, whichever period last expires. The running of the time for appeal is terminated as to all parties by a timely motion made by any party *pursuant to any of the rules herein enumerated,* and the full time for appeal fixed in this subdivision commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: Granting or denying a motion for judgment under *Rule 50(b)*; or granting or denying a motion under *Rule 52(b)* to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; or granting or denying a motion under Rule 59 to alter or amend the judgment; or denying *a motion for a new trial under Rule 59.*" (Emphasis added.)

In a civil case, we held under similar circumstances that the notice of appeal was premature and, therefore, this court had no jurisdiction over the appeal. *Financial Management Corporation v. Wyoming Electric Sign Company,* Wyo.1977, 561 P.2d 237. The appellant therein had filed a notice of appeal while a motion for new trial under Rule 59, W.R.C.P., was still pending.

---

1. Section 6–129, provides in pertinent part:
   "Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than fourteen (14) years:
   (1) Any building or dwelling; or
   \* \* \* \* \* \*"

While appellant here contends that a premature notice of appeal does not deprive this court of jurisdiction, we need not reach that question in order to dispose of the problem which we raised. Rule 73(a), supra, makes reference only to the civil rules, concerning various motions which will terminate the running of the time for appeal. It makes no reference to their criminal counterparts. We are, therefore, unable to read Rule 73(a), supra, as automatically including the criminal motions made in this case. Before we will dismiss an appeal for failure to file a timely notice of appeal, there must be clear grounds for doing so. Those grounds do not exist in this case, given the present state of confusion in regard to the applicability of Rule 73(a), supra, to criminal motions. The rules of this court pertaining to appeals have been revised and will remove any recognized lack of clarity.

## SUFFICIENCY OF THE EVIDENCE

The record furnishes the evidence necessary to a determination as to the sufficiency of the evidence challenged by the defendant. On the evening of April 2, at locking time, a box of tools was present in the grain-treating room of Tom Van Gelder's Greybull Elevator, located at Greybull, Wyoming, adjacent to the railroad yards. At the time of opening the business the next morning, the tools were immediately noticed to be missing. No one was given permission to enter the establishment during the night. The point of entry was identified to be a broken window, opening into the basement of the building, near which there was grain on the floor which appeared to be disturbed. The window had been broken for several weeks. The entry point was about 45–50 feet from the point where the tools had been located.

A Greybull police officer responded to a call at 7:15 a. m. the same morning the tools had been stolen but prior to notice to the police that they were missing. A Mrs. McMillan had called, reporting that a man was at her house trying to sell her some tools. The officer went to the house where he found the defendant with vise grips, screwdrivers, flashlight and a hand saw, later identified to be those stolen from Van Gelder's business. The defendant was told to leave the residence and be out of town by evening. The defendant advised the officer that he had been trying to catch a ride on the train but had not been able to do so yet. The defendant picked up the tools, placed them in his coat pockets and departed.

Shortly after that incident, Mr. Van Gelder reported to the police that tools were missing from his elevator, so the officer went at once to the railroad yards. By the time he caught up with the defendant, the defendant had already been located by Van Gelder and another individual and was being removed to a pickup. The officer at once arrested the defendant, advised him of his *Miranda* rights and removed him to the police station, where, upon search, a pair of vise grips, later identified as part of the stolen tools, were removed from the defendant's coat.

The defendant advised the officer he had sold the other tools to a railroad brakeman. The brakeman, then on a run, was located by a railroad official. The brakeman immediately upon return reported to the police and turned over the tools, identified during trial as those stolen from Van Gelder and bought from defendant at 7:40 the morning the theft was discovered but before it was reported. The brakeman's testimony was that he was approached by defendant and offered the tools. The defendant wanted $10.00 for them but took $7.00. The defendant advised the brakeman, according to the transcript: "He told me that he come out from Iowa in this old car and it broke down, he just talked to the police officer and the police officer told him to get out of town and he had these tools that he had taken out of the trunk of his car, would like to sell them." The defendant was identified by Van Gelder as having been in his place of business a day or so before the burglary.

The defendant then testified on his own behalf. He explained that he had hopped a

train in Casper earlier in the week, intending to go south, but got on the wrong train and ended up in Greybull, where he had gotten off to buy some liquor but the train pulled out leaving him stranded. He settled in a boxcar, in hopes that a train would take him somewhere. However, he discovered the boxcar was on the wrong track for that. With relation to the Greybull Elevator, he used a hobo camp just across the tracks and slept there by a fireplace. He jumped a freight the day before the night of the occurrence, struck up a friendship with someone by the name of Johnny, started drinking, apparently got off the train, where Johnny got a fire going in the hobo camp—where the drinking continued. He fell asleep near the fire. When he awakened at daylight, he went to pick up some paper and things, near what is referred to as the culvert, a sort of trash-strewn area, to build a fire. He said he found the tools right behind where he was sleeping. He wondered where they came from but needing a drink and a smoke, decided to sell them. He recalled his visit to sell the tools to Mrs. McMillan, his encounter there with the police officer, and the sale of tools to the brakeman. He agreed that he had told the brakeman he had taken the tools from the back of his car, adding, "I knew I had to come up with a story." After that, he bought a breakfast of eggs and hashbrowns, a pint of gin and a package of cigarettes. He could not recall breaking into the Greybull Elevator, but concluded, "If I broke into that elevator I was so drunk I didn't know what I was doing." The defendant admitted to having been convicted of six felonies, ranging from breaking and entering to attempted murder with a broken whiskey bottle. He related a history of drinking and attempted treatment, styling himself an alcoholic.

The defendant's issue as framed in his brief, on the insufficiency of evidence to convict is as follows:

"Whether the evidence was, as a matter of law, sufficient to sustain a conviction for burglary where

"1) the ultimate conclusion that defendant was guilty of intentional entry with intent to steal was drawn by pyramiding inferences upon inferences and

"2) the jury's finding of guilt was based solely on defendant's possession of stolen goods and

"a) there was no competent evidence of the corpus delecti, burglary.

"b) there was no evidence placing defendant at the scene of the crime, and

"c) there was no evidence contradicting the defendant's explanation."

We see much more evidence of guilt in this case than that observed by the defendant. We must start with a statement of our usual standard of review when the sufficiency of the evidence is challenged; that it will be examined in the light most favorable to the State. *Smith v. State*, Wyo.1977, 564 P.2d 1194. When the defendant charges a lack of sufficient evidence to sustain the jury verdict, it is the duty of this court to decide whether there is such sufficient evidence on which the jury could base its verdict. In the discharge of that duty, this court must assume the evidence in favor of the successful State as true, leaving out of consideration entirely the evidence of the unsuccessful defendant in conflict therewith. *Horn v. State*, Wyo. 1976, 554 P.2d 1141. On review, the prosecution evidence is given every favorable inference which may be reasonably and favorably drawn therefrom. *Evanson v. State*, Wyo.1976, 546 P.2d 412.

The defendant urges essentially that guilt cannot be based solely upon circumstantial evidence because it means piling up inferences. We know of no such concept representing accepted jurisprudence with respect to circumstantial evidence. Circumstantial evidence is many times the only way that an ultimate fact may be shown. *Blakely v. State*, Wyo.1975, 542 P.2d 857, explains that circumstantial evidence has standing and stature and is to be measured upon the same basis as direct evidence. It is a chain of proven circumstances indicating the guilt or innocence of the defendant.

We see no proving of an inference from another inference in this case. There may

be something offensive about basing an inference on an inference. It is an extremely technical as well as much criticized theory, Annotation, 5 A.L.R.3d 100, entitled, "Modern status of the rules against basing an inference upon an inference or a presumption upon a presumption," and has been noted in the jurisprudence of Wyoming but found inapplicable or of at least questionable application in those cases where mentioned. *Richey v. State,* 1921, 28 Wyo. 117, 201 P. 154, reh. den. 205 P. 304; *Rosencrance v. State,* 1925, 33 Wyo. 360, 239 P. 952. Be that as it may, we cannot see its applicability to this case, even if an accepted rule. In the case before us now, the circumstantial facts presented through direct evidence, point to only one ultimate inferential fact—guilt. That is distinctly different from pyramiding inferences.

To prove the crime of burglary, it is the burden of the State to establish beyond a reasonable doubt each of its statutory elements: (1) The crime occurred in the County of Big Horn, Wyoming on or about the 2nd day of April, 1976. (2) The defendant intentionally entered the Greybull Elevator, a building, (3) without the consent of the person in lawful possession, (4) with the intent to steal.

There is no question about date and venue. There can be no question but what the Greybull Elevator was intentionally entered without the consent of the person in lawful possession by someone with the intent to steal. The entry is established by the presence of the tools at closing time and their absence when the building was reopened the next morning, not more than 14 hours later. Any reasonable mind must conclude that in order to effect removal of the tools, entry was necessary. The larceny could not have been committed without a felonious entry. The phenomena of rubbing Aladdin's lamp or levitation have not gained general acceptance as a shortcut. Since the tools were not taken by the owner or by one with his permission, the element of stealing was present. The tools in the possession of the defendant were proved to be the same tools as those stolen from the building entered. The entry was made outside regular business hours, thus subsection (c) [2] of the burglary statute, footnote 1, was inapplicable.

With that summary of undisputed facts, only two facts are necessary to complete the proof of all elements: Did the defendant (1) enter the building, and (2) with intent to steal?

■ Several facts lead to the conclusion that the jury, beyond a reasonable doubt, was justified in placing guilt upon the defendant. The most condemning fact was his possession of recently stolen property, a subject upon which this court has recently spoken. In *Newell v. State,* Wyo.1976, 548 P.2d 8, 13, a burglary case, it was said:

"* * * The most significant and material evidence of defendant's guilt is his possession of the stolen property. Possession is a strong circumstance tending to show guilt and only slight corroborative evidence of other inculpatory circumstances is required. *Orcutt v. State,* Wyo.1961, 366 P.2d 690, 692–693." [3]

That being the settled rule, we need find in this case only the slight "other inculpatory circumstances." [4] They are more than slight.

The defendant had the opportunity to commit the crime charged. By opportunity is meant that he was in the immediate vicinity of the building for a day or two

---

**2.** Section 6–129(c), W.S.1957, provides:

"For the purpose of this section, entry into a place during the time when it is open to the general public is with consent."

**3.** Some states do not require any corroborative evidence. For example, see *People v. McClendon,* 1975, 188 Colo. 140, 533 P.2d 923, where it was held that:

"* * * Burglary may be proven by circumstantial evidence alone and without the assistance or support of direct evidence if the prosecution demonstrates that a burglary was committed, that goods were stolen as part of the burglary, and that the articles which were stolen were found shortly thereafter in the possession of the defendant. * * *"

**4.** Generally, see 1 Wharton's Criminal Evidence, 13 Ed., § 139, pp. 234, et seq.

before commission of the crime. Evidence of opportunity to commit the crime is a link which considered with other incriminating facts may establish the guilt of the defendant. *Jones v. State*, Wyo.1977, 568 P.2d 837. He was recognized by the owner of the Greybull Elevator as having been in the building during business hours a day or so before to obtain a jug of water. He was living in a hobo camp directly across the railroad tracks from the Elevator, which was located next to the tracks. In *Delmont v. State*, 1906, 15 Wyo. 271, 88 P. 623, reh. den. 88 P. 1102, it was held that being seen in the vicinity of the burglarized building about the time of the occurrence is supporting circumstantial evidence to be considered. In *State v. Costin*, 1934, 46 Wyo. 463, 470, 28 P.2d 782, this court considered opportunity a fact circumstance where the defendant, a stranger, had visited the ranch from which furs were stolen, though it certainly does not in itself lead to a necessary inference that the opportunity was used to commit the crime. It nevertheless is supportive.

Defendant's presence in the neighborhood of a burglarized house is an important circumstance and is not to be treated merely as a coincidence. *People v. Whisner*, 1950, 99 Cal.App.2d 845, 222 P.2d 900. Placing defendant in the area of the scene of the crime, along with possession is sufficient to sustain a conviction. *Frew v. State*, Okl.Cr. 1972, 503 P.2d 900; *Washington v. State*, Okl.Cr.1976, 554 P.2d 819; *State v. Devlin*, 1968, 249 Or. 678, 439 P.2d 1008. See also *State v. Pederson*, 1967, 102 Ariz. 60, 424 P.2d 810, cert. den. 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142; *United States v. Campbell*, 10 Cir. 1972, 453 F.2d 447.

The defendant's dealing with the property as his own, by sale, is a corroborating circumstance. *People v. Carroll*, 1947, 79 Cal.App.2d 146, 179 P.2d 75.

Fabrication of a false, exculpatory statement for the sake of diverting inquiry or casting off suspicion is circumstantial evidence of guilt. *Bennett v. State*, Wyo. 1963, 377 P.2d 634. At the time the defendant sold the tools to the railroad brakeman, he said they had come from the trunk of his car and he had to sell them to get out of town. He, in fact, had no automobile and had come into town on a freight train. Possession of property, coupled with false statement as to the manner in which property came into possession of accused is sufficient evidence to sustain a burglary conviction. *People v. Mercer*, 1951, 103 Cal. App.2d 782, 230 P.2d 4.

All of the foregoing facts denoting corroborating circumstances of recently acquired possession of stolen property were developed in the State's case-in-chief. The defendant took the witness stand in his own defense and attempted to explain his possession as having found the tools or, in the alternative, if he entered the grain elevator and removed the tools, he was too drunk to know what he was doing. Possession, plus an explanation the jury could find to be false, is corroboration. It is a fact finder's question as to whether the explanation tendered raises a doubt and the jury is not required to believe the defendant's explanation of possession. *Newell v. State*, supra. See also West's Digest System, Burglary, ▇▇▇▇▇▇▇▇▇ The jury elected to disbelieve the defendant's unlikely version.[5] When the attempted explanation is rejected by the jury, that is the equivalent of no explanation raising a reasonable doubt. We will not interfere with the jury judgment in such case unless its conclusion is inherently impossible or unreasonable. *People v. Heiple*, 1975, 29 Ill.App.3d 452, 330 N.E.2d 556.

Though motive is not an element of a crime and proof of motive is not essential to sustain a conviction, it has great probative

---

**5.** The defendant in his testimony confirmed that he had been six times convicted of felonies. Evidence of prior felony convictions is admissible for impeachment purposes. *Gabrielson v. State*, Wyo.1973, 510 P.2d 534, 536; *Kennedy v. State*, Wyo.1970, 470 P.2d 372, reh. den. 474 P.2d 127, cert. den. 401 U.S. 939, 91 S.Ct. 933, 28 L.Ed.2d 218; *State v. Hines*, 1958, 79 Wyo. 65, 331 P.2d 605, cert. den. 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261. See Rule 609, W.R.E., applicable after the within case was tried.

force in determining guilt, especially in cases that depend on circumstantial evidence. *Jones v. State,* Wyo.1977, supra. The defendant's own testimony was that he sold the tools because he was hungry and needed more liquor and cigarettes.

The facts presented to the jury, which we have just reviewed and discussed, establish the defendant's unlawful entry and the intent to steal.

■ If property stolen is soon thereafter found in possession of one charged with burglary, proof of an unlawful entry, together with circumstances showing guilty conduct by the defendant, is evidence not only of the larceny but also that he made use of the entry by which the property was acquired. *State v. Pepperling,* 1974, 166 Mont. 293, 533 P.2d 283; *State v. Deeds,* 1952, 126 Mont. 38, 243 P.2d 314.

## JURY INSTRUCTIONS

The defendant's final issue is framed as follows:

"Whether Jury Instruction [sic] Number nine (9) and ten (10) were plain and reversible error;

"1) whether instruction number ten (10) is a misstatement of the law and,

"2) whether instructions number nine (9) and ten (10) are contradictory."

Instruction number nine (9) reads as follows:

"You are instructed that drunkenness is not an excuse for any crime or misdemeanor in the State of Wyoming, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person or persons, for the purpose of causing the perpetration of an offense, in which case the person or persons so causing such drunkenness for such malicious purpose shall be considered principle [sic] or principles [sic] and suffer the same punishment as would have been inflicted upon the person or persons committing the offense, if he, she, or they, had been possessed of sound reason and discretion; where crime rests in intention, the inebriated condition of the De-

fendant at the time of the offense may be proven as bearing upon the question of intention."

Instruction number ten (10) was in the following language: "YOU ARE instructed that a man who voluntarily puts himself in condition to have no control of his actions must be held to intend the consequences."

There was no objection made to either or both of the instructions nor was a different form of instruction or instructions on the subject of drunkenness offered by defendant. Rule 31, W.R.Cr.P., requires that objections to instructions be made in the manner provided by Rule 51, W.R.C.P., which provides:

"* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

This court has repeatedly held that failure to object to instructions precludes their review. *Hampton v. State,* Wyo.1977, 558 P.2d 504; *Daellenbach v. State,* Wyo.1977, 562 P.2d 679; *Cullin v. State,* Wyo., 565 P.2d 445; *Fuller v. State,* Wyo.1977, 568 P.2d 900. Our only avenue of review therefore is within the doctrine of plain error, Rule 49(b), W.R.Cr.P.; *Daellenbach v. State,* supra, the application of which must be exercised cautiously and only in exceptional circumstances, *Hays v. State,* Wyo. 1974, 522 P.2d 1004.

It is unfair to the trial judge not to object prior to the giving of instructions. This court has said that the purpose of the rule is to offer the trial judge an opportunity to correct an erroneous, or at least clarify, proposed instructions. *Bentley v. State,* Wyo.1972, 502 P.2d 203. The burden is on the defendant to show prejudicial error. *Todd v. State,* Wyo.1977, 566 P.2d 597; *Hampton v. State,* supra.

■ There is no inconsistency in the questioned instructions here. Instruction number 10 is no more than a repetition of the opening clause of Instruction number 9 that "You are instructed that drunkenness

is not an excuse for any crime or misdemeanor in the State of Wyoming * * *," followed by the qualification that it is involuntary when caused by others. Instruction number 10 merely states, "YOU ARE instructed that a man who voluntarily puts himself in condition to have no control of his actions must be held to intend the consequences," and is surplusage at the most. The two instructions do not in any way erase the last command of Instruction number 9, "* * * where crime rests in intention, the inebriated condition of the Defendant at the time of the offense may be proven as bearing upon the question of intention." It is the latter that is important to the defendant.

The instructions together are entirely consistent with the sense of the provisions of § 6–16, W.S.1957, [See § 6–1–116, W.S. 1977]:

"Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person or persons, for the purpose of causing the perpetuation [perpetration] of an offense, in which case the person or persons so causing said drunkenness for such malignant purpose, shall be considered principal or principals, and suffer the same punishment as would have been inflicted on the person or persons committing the offense, if he, she or they had been possessed of sound reason and discretion. Where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury, as bearing upon the question of intention."

The trial judge particularly advised the jury with the fourth paragraph of general Instruction number 2:

"If in these instructions any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason you are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all of the instructions together and regard each in the light of all the others. The order in which the instructions are given has no significance as to their relative importance."

The point was stated in "varying ways" but the jury was thus told not to ignore the sentence, that drunkenness has a "bearing upon the question of intention."

We must give the jury credit for the ability to follow the instructions. The defendant was not deprived of his defense of drunkenness and at full liberty to argue vigorously to the jury. They just in an uncomplicated way exercised their right to judge the credibility of the witnesses and refused to accept the defendant's version.

This entire case was simply one of fact for the jury to determine and we have no right to interfere with their decision upon the mass of evidence before them. There was substantial and acceptable evidence upon which to base their verdict. This court has long determined not to disturb the jury's function and privilege of deciding the facts. *Reilly v. State*, Wyo.1970, 496 P.2d 899, reh. den. 498 P.2d 1236; *State v. Riggle*, 1956, 76 Wyo. 1, 298 P.2d 349, reh. den. 300 P.2d 567, cert. den. 352 U.S. 981, 77 S.Ct. 384, 1 L.Ed.2d 366; *Phillips v. Territory*, 1872, 1 Wyo. 82. It is not our office to sit as a new jury to rehear the case.

Affirmed.

ARMSTRONG, District Judge, retired, dissenting, with whom ROSE, J., joins.

There are several concepts expounded by the majority which need either exposure or clarification by a dissenting opinion.

The bald statement is made in the opinion that when the sufficiency of the evidence is challenged on review, "it will be examined in the light most favorable to the State." Most important, this statement is followed with this provocative assertion: "this court must assume the evidence in favor of the successful State as true, leaving out of consideration entirely the evidence of the unsuccessful defendant in conflict therewith."

The "assumption" made by the statement seems to have been used in a few Wyoming

criminal cases recently, *but only in Wyoming*. *Hammer v. Town of Jackson*, 524 P.2d 884, 886 (1974); *Shafsky v. State*, 526 P.2d 60 (1974); *Horn v. State*, 554 P.2d 1141, 1145 (1976); *Cullin v. State*, 565 P.2d 445, 448 (1977). It is an appellate rule of law used in *civil* cases. It had its origin in Wyoming in *Willis v. Willis*, 48 Wyo. 403, 49 P.2d 670, 678 (1935) and is almost a direct quote from 4 C.J. 857:

"* * * [T]he appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. 4 C.J. 857."

In a Wyoming replevin case, cited in 4 C.J. 861, it is said,

"where a case has been fairly presented to a jury upon conflicting testimony, their verdict will not be interfered with, unless the same is clearly and manifestly against the weight of evidence." *O'Brien v. Chiniquy*, 2 Wyo. 56 (1879).

The obvious conclusion to be drawn from that Wyoming civil case is a far cry from "leaving out of consideration entirely the evidence of the unsuccessful defendant in conflict therewith."

It is significant to trace the history to see how the wording of the rule got into our criminal jurisprudence.

*Hammer, supra*, was a misdemeanor case appealed from a municipal court. It cites as authority (for the rule that the evidence of the successful party is assumed to be true and leaves "out of consideration entirely evidence of the unsuccessful party in conflict therewith") two civil cases, *Stock v. Roebling*, 459 P.2d 780 (Wyo.1969) an easement case and *Jacoby v. Town of City of Gillette*, 62 Wyo. 487, 174 P.2d 505, 506, 177 P.2d 204, 169 A.L.R. 502 (1947), reh. den., a ditch damage case. *Stock* cites *Severin v. Hayes*, 372 P.2d 1017, 1020 (Wyo.1962), a gross negligence case, which in turn cites *Lasich v. Wimpenney*, 73 Wyo. 345, 278 P.2d 807 (1955), which cites *Jacoby, supra*. *Jacoby* cites as its precedent for the rule *Willis*,

*supra*, apparently the origin of the rule in civil cases in Wyoming. *Shafsky, supra*, cites only *Hammer*.

*Horn v. State, supra*, gives another civil case *Wilcox v. Herbst*, 75 Wyo. 289, 295 P.2d 755, 756 (1956) as its authority.

*Cullin v. State, supra*, cites *Bentley v. State*, 502 P.2d 203, 208 (Wyo.1972) which says simply that the "appellate court must view the evidence in the light most favorable to the state." It also cites *Sims v. State*, 496 P.2d 185, 187 (Wyo.1972) which says "an appellate court will give consideration only to the evidence favorable to the side which prevailed at the trial and disregard contrary evidence." *Harris v. State*, 487 P.2d 800 (Wyo.1971), reh. den., is also cited in *Cullin*. It says, at p. 801:

"In passing upon the sufficiency of the evidence to support a verdict of guilty, an appellate court will not weigh conflicting evidence nor consider the credibility of witnesses; and it must view the evidence in a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict."

*Dryden v. State*, 535 P.2d 483, 496 (Wyo. 1975) is also cited in *Cullin*, but it holds, with regard to the question under discussion here, almost precisely what is said in *Harris*, above.

It is submitted that the statement in the majority opinion that the evidence of the state in a criminal case will be assumed to be true, "leaving out of consideration entirely the evidence of the unsuccessful defendant in conflict therewith," is an overkill. It fails to follow *Harris* and *Dryden* which more clearly state the appellate rule. It is taken from the rule prevailing in civil appeals. It has no counterpart in any other jurisdiction that the writer can find. It abdicates the appellate court's duty to determine questions of law as to which there is substantial evidence that will support the verdict.

It is interesting to note that the majority cites *Reilly v. State*, 496 P.2d 899 (Wyo.

1970), reh. den. 498 P.2d 1236, as one of the cases supporting the statement that "[t]his court has long determined not to disturb the jury's function and privilege of deciding facts." A cursory reading of the opinion and holding in *Reilly* compels the conclusion that the jury in finding defendant guilty must have failed to consider some expert testimony introduced by defendant. The case was reversed and remanded for that reason.

5 Am.Jur.2d Appeal and Error, § 838, pp. 280–281, discusses the limitations of the rule this way:

"In a criminal case, the appellate courts will ordinarily not attempt to determine disputed questions of fact, and will ordinarily not disturb the finding of fact reached by a jury in its verdict, if there is substantial evidence to support it. The application of the rule is, however, doubtless influenced to some degree by the fact that in a criminal case guilt must be proved beyond a reasonable doubt, and it has been said that an appellate court should not sustain a finding of guilt by the jury where it entertains a reasonable doubt as to the justification of that finding."

24A C.J.S. Criminal Law § 1831, pp. 521–522 states the duty of the appellate court in a criminal case thusly:

" * * * However, in general, an appeal in a criminal case imposes on the appellate court the duty of determining questions properly raised by appellant. It is the duty of the appellate court in a criminal case to set and maintain a standard for the prosecution of accused persons; and the appellate court must employ diligence to protect and safeguard the rights of accused. Accordingly, if the appellate court concludes that accused failed to receive a fair trial, or that prejudicial error was committed, it will reverse the conviction, no matter how strong may be the evidence against accused, and regardless of accused's bad character and previous criminal record."

*Reilly v. State, supra,* 496 P.2d at 902, states:

"To refuse to examine the record in a case of this character to determine the existence of substantial evidence would be simpler but would in effect repeal the statutory requirement of proof beyond a reasonable doubt."

In *Corbin v. United States* (10th Cir. 1958) 253 F.2d 646, 649, it is said:

"The jury passes upon the credibility of the witnesses and determines the fact of reasonable doubt. We are confined to the question of law as to whether there is substantial evidence, either direct or circumstantial, which, together with the reasonable inferences to be drawn therefrom, sustains the verdict. In doing this we must look at the evidence from the standpoint most favorable to the government."

As the majority points out the grain elevator in this case was intentionally entered by "someone" with the intent to steal. On appeal it becomes this court's duty to ascertain if the facts and inferences point beyond a reasonable doubt that the someone was the defendant. It is undisputed that defendant sold the missing tools soon after their disappearance. The majority opinion emphasizes this evidence, but it pays scant attention to defendant's uncontradicted testimony that he found them.

Unexplained possession of recently stolen goods may support a conviction of theft of the property, but defendant was not charged with larceny or possession of stolen property. He was charged with intentionally entering a building when not open to the public and that he entered with specific intention of stealing some property of value. His possession of stolen property is only one link in the essential elements of the crime charged. There also must be evidence, direct or circumstantial, to link the defendant to an intentional entry and further that the entry was with the specific intention to steal. *Rance v. State,* 331 N.E.2d 40 (Ind.App.1975).

It is the duty of the state to prove beyond a reasonable doubt every essential element of the crime charged. In this case proof of two specific intentions must be proved by

direct or circumstantial evidence. The majority says in effect it must be inferred that defendant intentionally entered the building because he ended up with the stolen property. Then the intention to steal must be inferred because defendant ended up with the property. There is no testimony or evidence to connect this defendant with either entry or intention to steal. If defendant was to be charged the crime should have been possession of stolen property, not burglary.

In addition to possession of recently stolen goods, circumstantial evidence which the majority finds that "justified [the jury] in placing guilt upon the defendant," was opportunity, dealing with the property as his own, fabrication of a false exculpatory statement, and motive. Briefly, the window through which entry was achieved into the elevator had been broken for six weeks prior to the entry. The opportunity was there for anybody. Dealing with property as his own, does not tend to show a burglary especially in view of defendant's explanation of finding them mingled with other discarded goods.

Fabrication of a false statement is founded on defendant's explanation to his purchaser which differed from his testimony that he found the tools. The explanation was not under oath so is not a false statement as it is defined in a legal action. His sworn testimony was not contradicted and is not an unbelievable story. There is nothing in the record to refute defendant's testimony to the effect that the purchaser would more likely believe he was selling his own tools than those he found. There is no evidence that the explanation was a preconceived design to thwart the efforts of any police officers to solve a burglary. *People v. Peete,* 54 Cal.App. 333, 202 P. 51, 60 (1921).

With respect to the majority's unwarranted extension of a legal principle first embraced by this court in *Newell v. State,* 548 P.2d 8 (Wyo.1976), reh. den., and now in this case, the court says:

"Possession, plus an explanation which the jury could find to be false, is corroboration."

In support of this principle the court cited the California case of *People v. Carswell,* 149 Cal.App.2d 395, 308 P.2d 852 (1957), wherein it is stated:

" * * * If possession of stolen goods soon after a burglary is unexplained or the attempted explanation rejected by the jury, such alone is sufficient corroboration. *People v. Miller,* 54 Cal.App.2d 384, 386, 128 P.2d 785; *People v. Haughey,* 79 Cal.App. 541, 543, 250 P. 406; *People v. Rice,* 29 Cal.App.2d 614, 620, 85 P.2d 215 * * *."

The California case, and the cases cited therein, however, were all cases in which accomplices had testified as to the defendant's involvement in the crime charged. In such cases, the court found that the jury's rejection of the defendant's explanation of possession was sufficient corroboration *of the accomplices' testimony,* which in turn was sufficient corroboration of guilt when coupled with possession of recently stolen goods. Suffice it to say there is no testimony of an accomplice in the present case and, therefore, the jury's rejection of appellant's explanation of possession is not corroboration of inculpatory circumstances. This conclusion is buttressed by the observation that this case is also not one where there is evidence of contradictory explanations of possession between the time of apprehension and trial. See, *State v. Hunter,* 102 Ariz. 472, 433 P.2d 22 (1967); and *State v. Solano,* 181 Neb. 716, 150 N.W.2d 585 (1967). Appellant admitted he lied to the railroad hand, but made no contradictory statements after apprehension.

The proper role of a rejected explanation of possession was aptly described in *State v. Pederson,* 102 Ariz. 60, 424 P.2d 810 (1967), cert. den. 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142—a case relied on by the court in *State v. Hunter, supra,* as follows:

" * * * [I]f defendants had wished *to remove the effect of possession of stolen goods from the facts and circumstances to be considered by the jury,* defendants should have offered some explanation of their possession of such goods * * *." 424 P.2d at 818. [Emphasis supplied]

Except under certain circumstances, such as where there are contradictory statements as to possession after apprehension or where there is accomplice testimony, the only effect of a rejected explanation of possession is to leave the circumstance of possession for jury consideration. This, however, does not obviate the need for showing of *additional* inculpatory circumstances such as those found in *Newell v. State, supra.* Although the jury is not bound to accept an appellant's explanation of possession, when the explanation is made at the time when appellant's possession is first challenged or questioned, the necessity of showing the explanation is false is greater—especially when the explanation is reasonable. *Callahan v. State*, Tex.Cr.App., 502 S.W.2d 3, 6–7 (1973), reh. den. When the appellant's explanation is so refuted, the effect is to leave the fact of appellant's possession before the jury as a circumstance, although not in itself sufficient to sustain a conviction, tending to show guilt.

Suffice it to say that I fear the majority has implicitly, if not expressly, determined that a jury's disbelief of a defendant's testimony is substantive or corroborative evidence of guilt in burglary cases. I can only conclude that the application of such a principle to cases like the instant appeal will severely chill a defendant's decision to take the stand in his own defense.